SERVICE CORPORATION INTERNA-
TIONAL; SCI, Texas Funeral Ser-
vices, Inc. d/b/a Sunset Memorial Gar-
dens; and Sunset Memorial Gardens
& Funeral Home, Appellants,

v.

Estela ARAGON, Individually and on
Behalf of her Minor Son, Christian
Aragon; Erica Aragon; Rebecca Ara-
gon Rizo; and Stephen Aragon, Appel-
lees.

No. 11–07–00008–CV.

Court of Appeals of Texas,
Eastland.

Aug. 7, 2008.

Rehearing Overruled Sept. 11, 2008.

Dick R. Holland, Clifton & Holland, P.C., Midland, William W. Clifton, Jr., Shafer, Davis, O'Leary & Stoker, Odessa, for Appellants.

John H. Green, Law Office of John H. Green, Odessa, for Appellees.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

Estela Aragon, individually and on behalf of her minor son Christian Aragon, and Erica Aragon, Rebecca Aragon Rizo, and Stephen Aragon filed suit against Service Corporation International; SCI, Texas Funeral Services, Inc. d/b/a Sunset Memorial Gardens; and Sunset Memorial

Gardens and Funeral Home (SCI collectively). Plaintiffs alleged that defendants improperly buried Osbaldo "Obie" Aragon, Estela's husband and the remaining plaintiffs' father, by burying him in the wrong plot and then moving his body without Estela's consent. The jury found that SCI violated the Deceptive Trade Practices–Consumer Protection Act (DTPA)[1] and that each plaintiff suffered mental anguish damages. The jury awarded Estela mental anguish damages of $275,000, Christian $150,000, Erica and Rebecca $80,000 each, and Stephen $3,000. The jury also awarded each plaintiff additional damages. The amounts awarded exceeded the DTPA's damage cap,[2] and the trial court reduced the awards to twice the individual plaintiff's actual damages and rendered judgment accordingly. We affirm in part and reverse and render in part.

## I. Background Facts

Obie was diagnosed with colon cancer in 2000. He succumbed to his illness on April 11, 2003. Estela decided to bury him in Sunset Memorial Gardens, and she purchased the interment rights for Plots 218–1 and 218–2. The funeral was held on April 14, 2003. When the family arrived at the cemetery for the graveside service, Estela and Rebecca noticed that the wrong plot had been opened, but neither attempted to stop the service nor complained to SCI. Estela and other family members visited Obie's grave site in the days following the funeral. His flowers and temporary marker were at Plot 202–2 where he had been buried.

Unfortunately, Plots 202–1 and 202–2 had been previously sold to Billie Marie Curtis. She died in May 2003 and was buried in Plot 202–2 on May 17. Estela visited the cemetery on May 19 and noticed an awning, new flowers, and a temporary marker with Curtis's name on Plot 202–2. Obie's tombstone was at Plot 218–1. Estela met with the cemetery manager, David Barrientes. He reviewed the cemetery's paperwork and advised her that Obie had been properly buried in Plot 218–1. He offered to disinter Obie's body to confirm this. After suit was filed, Plot 218–1 was opened, and Obie's remains were identified.

## II. Issues on Appeal

SCI challenges the judgment with twenty-four issues. SCI contends that Christian, Rebecca, Erica, and Stephen are not consumers; that the evidence is insufficient to support several of the jury's findings; that SCI made no false, misleading, or deceptive statements as a matter of law; that the jury charge impermissibly failed to include a reliance question for each of the plaintiffs; that SCI did not engage in an intentional or unconscionable course of action as a matter of law; and that the trial court erred by allowing plaintiffs' expert to testify.

## III. Analysis

### A. Are Christian, Rebecca, Erica, and Stephen Consumers as Defined by the DTPA?

SCI argues that only Estela sought goods or services and was the only consumer. SCI notes that Estela was the only plaintiff who signed any agreement with SCI and was the person who purchased and paid for Plots 218–1 and 218–2; that Christian was only twelve years old at the time and that he and Stephen had not been to the cemetery prior to the funeral service; that Stephen left Odessa after the

---

1. Tex. Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 2002 & Supp.2007).

2. Section 17.50(b)(1).

service; and that, while Rebecca was present when Plots 218–1 and 218–2 were purchased, she was not a party to any transaction with SCI. SCI also points out that, after suit was filed, it moved for arbitration citing an arbitration provision in the agreement for perpetual care. Plaintiffs argued that Christian, Erica, Rebecca, and Stephen had not signed the agreement and, therefore, were not subject to the arbitration provision.[3]

■ Only a "consumer" has standing to sue under the DTPA. *See* Section 17.50. The DTPA defines consumer as one "who seeks or acquires by purchase or lease, any goods or services." Section 17.45(4). A plaintiff need not establish privity of contract to be a consumer. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex.1996). Instead, a plaintiff's standing as a consumer is established by her relationship to the transaction. *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex.App.–San Antonio 2000, no pet.). A third-party beneficiary may qualify as a consumer as long as the transaction was specifically required by or intended to benefit the third party and the good or service was rendered to benefit the third party. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex.1997).

When determining whether a third-party beneficiary qualifies as a consumer, courts have considered whether the third party was the primary intended beneficiary or if it derived only an incidental benefit. For example, in *Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex.1985), employees were the primary intended beneficiary of an insurance policy purchased by their employer and, therefore, were consumers. Conversely, in *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 408 (Tex.App.–Houston [14th Dist.] 1997, writ dism'd by agr.) (will beneficiaries injured by estate counsel's legal malpractice), and *Brandon v. American Sterilizer Co.*, 880 S.W.2d 488, 492 (Tex.App.–Austin 1994, no writ) (hospital employee injured by defectively repaired gas sterilizer), the third parties were only incidental beneficiaries and, therefore, were not consumers.

■ No Texas decision directly addresses who the intended beneficiaries are when a cemetery plot or funeral services are purchased, but Texas courts have allowed immediate family members to bring common-law actions for mishandling a corpse. *See, e.g., Clark v. Smith*, 494 S.W.2d 192 (Tex.Civ.App.–Dallas 1973, writ ref'd n.r.e.). In this case, a son contracted with the defendant to take his mother's body from a hospital to the defendant's place of business and to maintain the body in suitable condition for decent burial. The defendant took possession of the decedent's body but allowed it to decompose. *Id.* at 194–95. The jury awarded mental anguish damages to each of the decedent's four children. The court suggested a remittitur but affirmed their right to recover. *Id.* at 198. Thus, even though only one of the decedent's children dealt with the defendant, because each was allowed to recover, the defendant's duty ran to all four. If a company taking possession of a body has a duty to the decedent's children, it is reasonable to conclude as the trial court did that SCI's interment services were intended for the benefit of Obie's immediate family and that each was a consumer. Issue No. One is overruled.

*B. Sufficiency of the Evidence.*

SCI complains of a number of the jury's findings, contending that they are supported by legally or, alternatively, factually insufficient evidence.

---

**3.** The trial court denied the motion. That ruling is not challenged on appeal.

### 1. Standard of Review.

When conducting a legal sufficiency review, we consider all of the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22 (Tex.2005). When conducting a factual sufficiency review, we consider all of the evidence and uphold the jury's finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

### 2. Was Obie Incorrectly Buried and Subsequently Moved?

The jury found that Obie was originally interred in Plot 202–2 and was then moved to Plot 218–1 without Estela's consent. SCI contends that both findings are supported by legally or factually insufficient evidence. We disagree.

Estela testified that she wanted a plot near the road and close to a tree. She purchased the interment rights for Plots 218–1 and 218–2. Estela testified that, when she arrived at the cemetery for the funeral, she noticed that her husband was being buried in Plot 202–2. Estela's testimony was confirmed by family members, friends, a funeral home employee, and the minister who performed the funeral service. SCI's employees disputed this testimony, contending that Obie was correctly buried in Plot 218–1. When the parties offer conflicting testimony, the jury has the exclusive responsibility to determine the credibility of the witnesses and the weight to be given their testimony. *Novosad v. Mid–Century Ins. Co.*, 881 S.W.2d 546, 548 (Tex.App.–San Antonio 1994, no writ). The jury had sufficient evidence to resolve this conflicting evidence in plaintiffs' favor.

It is undisputed that Obie's body was in Plot 218–1 at the time of trial. SCI denied moving Obie's body. However, plaintiffs presented evidence that a body cannot be accidentally disinterred and moved to a new location and that this could not happen without SCI's knowledge. The cemetery's former general manager testified that, if a body was moved, it would have been done by a cemetery employee. The jury had sufficient evidence to conclude that Obie's body was moved from Plot 202–2 to Plot 218–1 and that it was moved by SCI. Issue Nos. Two, Three, Four, and Five are overruled.

### 3. Did SCI Engage in Any Unconscionable Action, Course of Action or Intentional Conduct?

SCI contends that there is legally or factually insufficient evidence to support the jury's findings that it engaged in an unconscionable action or course of action or that it acted intentionally. The DTPA allows a consumer to recover actual damages for any unconscionable action or course of action that is the producing cause of damage. Section 17.50(a)(3). "Unconscionable action or course of action" is defined as "an act or practice which ... takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Section 17.45(5). The defendant's intent is irrelevant because unconscionability is an objective standard. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998). To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of her lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated. *Brad-*

ford v. Vento, 48 S.W.3d 749, 760 (Tex. 2001).

SCI argues that the relevant inquiry must consider and be limited to the time of the transaction and contends that there is no evidence of an unconscionable action on April 12 when Estela purchased interment rights for herself and Obie. SCI defines the transaction too narrowly. In *Houston Livestock Show and Rodeo, Inc. v. Hamrick,* 125 S.W.3d 555, 576 (Tex.App.–Austin 2003, no pet.), the court held that a transaction was not completed when the plaintiffs paid their entry fee, but necessarily included the host of services plaintiffs purchased. In this instance, Estela and SCI entered into a purchase agreement and a perpetual care agreement. These agreements obligated SCI to provide burial services the day of Obie's funeral and to perpetually maintain that plot thereafter.

■■■ We have found that sufficient evidence supports the jury's findings that Obie was buried in Plot 202–2 and was later moved by SCI to Plot 218–1. SCI points out that there was no evidence that its employees intentionally opened the wrong space. We agree. It is reasonable to assume that the initial interment in Plot 202–2 was an innocent mistake. However, at some point between Obie's burial on April 14 and Curtis's burial on May 17, his body was moved without the family's permission. This would not have occurred accidentally but only as the result of an intentional act and only with SCI's knowledge.

In *Hines v. Evergreen Cemetery Ass'n,* 865 S.W.2d 266, 269 (Tex.App.–Texarkana 1993, no writ), the court wrote: "One does not purchase a burial plot with the expectation that the cemetery association will surreptitiously move the body from place to place without permission of the family." The evidence is legally and factually sufficient to establish that SCI committed an unconscionable act or course of action and that it acted intentionally. Issue Nos. Twelve through Sixteen are overruled. This holding makes it unnecessary to address SCI's Issue Nos. Six through Eleven.

### 4. Past and Future Mental Anguish.

The jury awarded each plaintiff past mental anguish damages, and it awarded Estela and Christian future mental anguish damages. SCI argues that plaintiffs' complaints are not compensable as mental anguish damages as a matter of law, that the evidence is legally insufficient to support the jury's awards, or, alternatively, that the evidence is factually insufficient.

■■■ Mental anguish requires more than mere worry, anxiety, vexation, embarrassment, or anger. Instead, a plaintiff must show a high degree of mental pain and distress. *Latham v. Castillo,* 972 S.W.2d 66, 70 (Tex.1998). This requires evidence of the nature, duration, and severity of the mental anguish and a substantial disruption in the claimant's daily routine. *Saenz v. Fid. & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996). There must also be evidence to justify the amount awarded. *Id.* Mental anguish damages cannot be determined with mathematical precision but only through the exercise of sound judgment. *Bentley v. Bunton,* 94 S.W.3d 561, 605 (Tex.2002). Even so, the jury cannot simply pick a number and put it in the blank but must award fair and reasonable compensation based upon the evidence. *Saenz,* 925 S.W.2d at 614.

In *Bentley,* the court held that plaintiff's testimony that he had lost sleep, been embarrassed in the community, his family disrupted, and his children distressed at school, coupled with evidence from his friends that he was depressed, that his

honor and integrity had been impugned, and that his family had suffered left no doubt that he had suffered mental anguish. 94 S.W.3d at 606–07. In *Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 797–98 (Tex. 2006), the court held that plaintiff's testimony that he was depressed, humiliated, noncommunicative, unable to sleep, angry, and suffered from headaches and nightmares and that his daily activities and family relationships were detrimentally affected was legally sufficient evidence of mental anguish.

Conversely, in *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 445 (Tex.1995), plaintiff's testimony that he was hot and disturbed, that his lifestyle had been changed, that the situation was unpleasant and upsetting, and that it caused friction within the family was insufficient evidence of mental anguish because it amounted to mere expressions of anger, frustration, or vexation and, thus, was evidence of mere emotions. Similarly, in *Saenz,* statements that the plaintiff was worried about losing his home and that he could not afford his medical bills failed to establish more than emotional disturbances and, thus, failed to establish mental anguish. 925 S.W.2d at 614. Finally, we note that in *Gunn Infiniti, Inc. v. O'Byrne,* 996 S.W.2d 854, 860 (Tex. 1999), the court held that a plaintiff's bare testimony that he suffered mental anguish is no evidence of mental anguish.

Utilizing these cases as guidelines, there is legally and factually sufficient evidence that Estela and Christian suffered past mental anguish, that they would suffer future mental anguish, and that Rebecca suffered past mental anguish.[4] The evidence is legally insufficient to establish that Erica or Stephen suffered past mental anguish.

 Estela testified that she panicked when she saw another woman's marker on Obie's grave site and saw that his headstone had been placed on Plot 218–1. She subsequently felt devastated, terrified and nauseated and had trouble sleeping and functioning at work. She started losing clients, got migraines, and began taking prescription sleep medication. Her doctor referred her to a counselor who diagnosed her with depression, was still treating her at the time of trial, and had recommended that she see a psychiatrist to have antidepressant medication prescribed. Friends and family members testified that Estela cried frequently and was distraught, depressed, and withdrawn. SCI points out that Estela's medical records indicate some preexisting problems, that she had complained of stress to her doctor as early as 2001, that her medical records after the funeral were absent any complaints of stress or tearfulness for three years, and that at the time of trial Estela was not on any antidepressant or antianxiety medication.

 Christian testified that he was not doing well at school or on the cross-country team and that he had lost sleep, felt sad, and was unable to interact with his friends the same now. He testified that he thinks about this incident every day. Estela testified that Christian was terrified and had difficulty sleeping; that, even though he was sixteen years old, he did not want to leave her side because of fear and anxiety; that his grades had suffered; and that he had become introverted. SCI points out that Christian had not seen a counselor or other healthcare provider.

 Rebecca testified that she was perplexed and wondered what had hap-

---

4. The jury did not award Rebecca future mental anguish damages. She does not challenge that finding on appeal.

pened to her father and that she felt lost and panicked. She testified that she thought about this every day during her commute; that she cried in the morning and afternoon; that it has interfered with her work, home life, and health; that she has lost sleep; that she was depressed; and that she would wake up panicked. Rebecca agreed that she had not seen a therapist, psychiatrist, or psychologist; that she had remained gainfully employed; and that, although a doctor had given her samples of sleeping pills and antidepressants, she did not take them.

 Stephen testified that this incident had been hard on him and that he did not like coming to Odessa. He also testified that his school work had been affected because he did not feel comfortable and could not focus. Stephen had not sought counseling or medical help. Erica testified that she was scared and confused, that she quit working at Barnes & Noble shortly after the funeral because she did not want to talk to customers, and that her grades had suffered. She went to work at Starbucks after quitting Barnes & Noble but was subsequently fired and blamed it on the emotional impact of this incident. Neither Stephen nor Erica offered any testimony that they had seen a therapist or healthcare provider because of this incident or that they had taken any type of medication.

 Each of the witnesses established that this incident had caused some emotional impact and some disruption in their daily lives. We realize that there was conflicting evidence on the impact this event has had on them and whether their symptoms were actually due to Obie's death and that everyone had known for approximately one year that Obie's body was in Plot 218–1. It is not within the province of this court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *Carr v. Jaffe Aircraft Corp.*, 884 S.W.2d 797, 802–03 (Tex.App.–San Antonio 1994, no writ). The jury had sufficient evidence to resolve the conflicts in Estela's, Christian's, and Rebecca's favor. Its decision to do so is not against the great weight and preponderance of the evidence.

The distinction between Estela, Christian, and Rebecca on the one hand and Stephen and Erica on the other is the degree of pain and impact. Stephen's and Erica's testimony failed to establish injury beyond mere emotions or the necessary *substantial* disruption in daily affairs to constitute mental anguish. Conversely, Estela, Christian, and Rebecca established that this incident has caused more than an emotional reaction and has resulted in substantial disruptions in their daily affairs.

 There is also sufficient evidence to justify the jury's awards. This case does not have "hard" damages such as lost wages or medical expenses to use as a benchmark. However, it is clear that mishandling the body of a family member can cause damage. SCI's former manager agreed that one of the most devastating circumstances that can occur for an already-grieving family is to experience a wrongful burial. Richard L. DuBois explained how this manifests itself, testifying that this incident has cost Estela the chance to grieve normally.

It is also evident that the jury did not simply pick numbers at random but gave careful consideration to this issue. We note that the jury distinguished between each of the plaintiffs. Estela was the most obviously impacted and received the highest award. Christian and Rebecca offered similar damage testimony. Christian was still at home; consequently, the jury could have reasonably concluded that he was

more directly impacted. The jury only awarded future damages to Estela and Christian and awarded each less in future damages than it had for past damages. The jury's awards are fair and reasonable compensation based upon the evidence. Issue Nos. Seventeen, Eighteen, Nineteen, Twenty, and Twenty-one are granted in part and overruled in part. The jury's mental anguish awards for Estela, Christian, and Rebecca are affirmed. The mental anguish awards for Erica and Stephen are reversed, and judgment is rendered that they take nothing.

### 5. Additional Damages.

Finally, SCI challenges the legal and factual sufficiency of the evidence to support the jury's award of additional damages. The jury awarded Estela additional damages of $1,000,000 and Christian and Rebecca additional damages of $500,000. The trial court reduced those awards to two times actual damages, but SCI contends that the jury's findings are relevant because they indicate that it operated under the passion of prejudice against SCI. We disagree. Whether error exists must be measured against the judgment actually entered.

In this instance, an award of actual damages required proof of intentional conduct and mental anguish. We have previously found sufficient evidence to support the jury's findings of both elements. SCI concedes that the trial court properly reduced the additional damages, and we note that the amount awarded by the trial court is expressly authorized by the DTPA. Section 17.50(b)(1). Issue Nos. Twenty-two and Twenty-three are overruled.

### C. Plaintiffs' Expert Witness.

SCI asserted a *Daubert* challenge [5] to DuBois's testimony. DuBois had a masters degree in clinical psychology and provided counseling services to Estela. DuBois testified that Estela suffered from major depression. SCI complains that DuBois's testimony was simply the reiterated statements of Estela and that he improperly relied upon a questionable treatment, the "eye movement desensitization reprocessing" or EMDR. SCI argues that this was insufficient foundation upon which to admit DuBois's testimony. SCI also complains that DuBois failed to supplement his deposition testimony and failed to bring subpoenaed documents with him to trial.

In *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800–01 (Tex. 2006), the court held that expert testimony is admissible if the expert is qualified, the testimony is relevant, and the expert's opinions are based on a reliable foundation. A trial court's decision to admit expert testimony is reviewed for an abuse of discretion. *Paschal v. Great Western Drilling, Ltd.*, 215 S.W.3d 437, 445 (Tex. App.–Eastland 2006, pet. denied). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. Admission of expert testimony that does not meet the reliability requirement is an abuse of discretion. *Id.*

We do not understand SCI to argue that a counselor can never testify as an expert but as asserting a more specific complaint that plaintiffs did not carry their burden to establish that DuBois was qualified to testify as an expert. When SCI challenged DuBois's testimony, the trial court conducted a hearing outside the jury's presence. DuBois testified that he holds an

---

**5.** *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

M.S. in clinical psychology, is a licensed counselor, and has twenty years experience. He testified that Estela's physician, Dr. Ramanathan, referred Estela to him for counseling, and he explained his counseling process in general. He testified that he used the EMDR technique. He acknowledged that this is a controversial technique and that there are people on both sides of the issue but testified that it is currently being used at VA hospitals to treat people for traumatic events and that he had used it approximately twenty-five times over the last several years.

■■■ SCI did not offer any controverting evidence. Following the hearing, the trial court overruled SCI's objection and ruled that DuBois could testify about what he had done for Estela and his opinions concerning the results of that treatment. The trial court had sufficient information upon which to conclude that DuBois was qualified to testify as a counselor. The mere fact that there was some controversy regarding the EMDR technique did not make his testimony inadmissible particularly since SCI offered no evidence to contradict DuBois's testimony that it is currently being utilized at VA hospitals.

■■■ SCI also complains that DuBois failed to bring subpoenaed records with him to trial and that DuBois's deposition testimony was not properly supplemented thirty days before trial. The trial court did not abuse its discretion by not excluding DuBois's testimony because he was not a retained expert. *See* Tex.R. Civ. P. 195.6 ("If an expert witness is retained by, employed by, or otherwise under the control of a party, that party must also amend or supplement any deposition testimony."). Issue No. Twenty-four is overruled.

### IV. *Holding*

The judgment of the trial court is affirmed in part and reversed and rendered in part. That portion of the judgment awarding Erica and Stephen damages is reversed, and judgment is rendered that they take nothing. The remainder of the judgment is affirmed.