NO. 07-09-0315-CV
NO. 07-09-0354-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 10, 2010

_____

BYRON MORGAN,

Appellant

V.

D&S MOBILE HOME CENTER, INC.,

Appellee

STEPHANIE WYBLE, Individually and as Next Friend of FAITH
KUYKENDALL, a Minor, and HOPE KUYKENDALL, a Minor,

Appellant

v.

D&S MOBILE HOME CENTER, INC.,

Appellee

_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NOS. 61,517-A AND 59,594-A; HONORABLE HAL MINER, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

This appeal emanates from a dispute involving the purchase of a mobile home.[1] Though purportedly new, it actually was not. Though the damages caused during its delivery were to be repaired, they purportedly were not. Those who bought the home were Stephanie Wyble and Byron Morgan (who allegedly represented themselves to be married under the common law). The seller, in turn, was D&S Mobile Home Center, Inc. According to the record, Wyble sued D&S, asserting claims of fraud and deceptive trade practices. D&S responded by denying liability and counterclaiming for sanctions. It also sued Morgan, though he was not a party to Wyble's suit. Additionally, the recovery sought against Morgan generally consisted of specific performance; that is, D&S sought to have him negotiate a settlement check delivered to settle damage claims arising when the home was physically moved to its intended lot in Amarillo.

The trial court not only granted D&S summary judgment but levied sanctions against Wyble. Whether it did so correctly is what we are being asked to address. For the reasons which follow, we will reverse the the judgments and sanction order.

*Morgan's Claims*

Though Morgan asserts a myriad of issues, all need not be addressed. One is dispositive of the appeal, and it pertains to whether D&S proved, as a mattler of law, its entitlement to a summary judgment disposing of all claims. We conclude that it did not.

As previously alluded to, D&S sought specific performance of a settlement agreement. Per that accord, D&S' insurer issued a check payable to both Morgan and D&S. In return, Morgan executed a writing wherein he agreed to:

---

[1]Because summary judgments are involved, we construe the evidentiary record in a light most favorable to the non-movant. *See Valance Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005) (requiring as much from the reviewing court).

release, acquit and forever discharge Essex Insurance Company … and Shawn Fuller DBA D&S Mobile Home Center . . . and his, her, their, or its agents, servants, successors, heirs, executors, administrators, and all other persons, firms, corporations, associations, or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue *on account of or in any way growing out of any and all known and unknown, foreseen,and unforeseen, bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty, or event which occurred on or about the 15th day of April 2007at or near Amarillo, TX. . . .* [Emphasis added.]

It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said releasees deny liability therefore and intend merely to avoid litigation and their peace. Furthermore, this release is intended only to operate as a release of whatever claims the undersigned may have against the releasees . . . .

*The undersigned further declare(s) and represent(s) that no promise, inducement, or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere recital . . . .*

The "accident, casualty, or event" mentioned encompassed the damages inflicted upon the mobile home while being transported to its lot in Amarillo. Assuming *arguendo*, that the document was and is enforceable, the record nonetheless contains evidence of D&S' representation to Morgan, during the home's acquisition, that the mobile home was new when it was not. Indeed, appearing within the summary judgment record was evidence that the home not only had been sold to another person but also that (as of the date of deposition) D&S had yet to cause title to be transferred from the original buyer to Morgan. These circumstances provided basis for Morgan to complain, via his "counterclaim," of D&S knowingly misrepresenting ". . . that the home would be of a

3

particular quality, fitness, and value" when it was not and of committing "common law fraud" and a "deceptive trade practice." And, since they were unrelated to the "accident, casualty, or event" of April 15, 2007 (*i.e.* the transportation of the home to Amarillo), they were not encompassed by the release.[2] This, in turn, means that they were not encompassed by D&S' motion for summary judgment since it was restricted to issues regarding the release and its enforcement. Consequently, the trial court could not legitimately adjudicate them at the time. *Johnson v. Brewer & Prichard, P.C.,* 73 S.W.3d 193, 204 (Tex. 2002) (holding it error to adjudicate claims that fall outside the scope of the summary judgment motion).

We further note that D&S included, within the summary judgment evidence, the deposition of Morgan. At several points during that deposition, Morgan described how D&S promised to repair the damage incurred by the mobile home during its transit to Amarillo, how he agreed to sign the release because D&S so promised, and how D&S failed to complete the repairs as promised. So too did Morgan plead the affirmative defense of failed consideration in effort to negate the enforceability of the release. This is important because when the consideration underlying a contract fails, the contract becomes unenforceable. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997). Given that the defense had been alleged, that D&S itself presented evidence addressing the matter via its summary judgment proof, and that there was evidence

_____

[2]That neither D&S nor the trial court viewed the summary judgment as adjudicating all the causes asserted by Morgan is exemplified by comments made during a May 15, 2009 hearing. A summary judgment order had been signed about four months earlier, that is, in January of 2009. Yet, the May 15th hearing involved special exceptions filed by D&S on May 6, 2006, to Morgan's counterclaim. And, at that hearing, the trial court stated "that [the] . . . Special Exceptions against the counterclaim of . . . Morgan be answered by . . . the 29th of May." Had the January 2009 summary judgment adjudicated all claims and causes of action, there would have been no need for the trial court to address whether the counterclaims were sufficiently pled at the May 15th hearing or to order Morgan to modify them by May 29th.

4

tending to illustrate that D&S failed to perform a promise used to induce execution of the release, a material issue of fact existed and exists with regard to the defense of failed consideration and the enforceability of the release.[3]

Simply put, the trial court erred in granting summary judgment in favor of D&S and against Morgan. Thus, both the final judgment executed on September 29, 2009, and summary judgment executed on January 12, 2009, will be reversed.

### *Wyble's Appeal*

#### *Death Penalty Sanctions*

In considering the appeal of Wyble, we first address the order entered by the trial court on September 11, 2009, prohibiting her from offering "any testimony or evidence regarding damages in her case in chief" and directing that her "claims" be "denied" because she "cannot put on evidence of the essential element of damages in her case ...." This mandate was executed in response to the motion of D&S to sanction Wyble for failing to supplement a discovery request. That is, she was asked during her deposition to identify the expert or lay witnesses who were going to discuss the damages she allegedly suffered. No names were provided at the time. And, because the period allotted to perform discovery allegedly had expired and she failed to supplement the particular discovery request, D&S convinced the trial court to issue the aforementioned order. This was wrong, according to Wyble, for various reasons. We agree.

---

[3]No one alleged via their summary judgment motion or responses thereto that the parole evidence rendered unenforceable the claim of failed consideration. Thus, we do not address that issue on appeal since summary judgment can be affirmed or reversed only on those grounds included in the summary judgment motion, evidence, and responses there. TEX. R. CIV. P. 166a(c); *Johnson v. Driver,* 198 S.W.3d 359, 362 (Tex. App.–Tyler 2006, no pet.).

That the order was tantamount to "death penalty sanctions" cannot reasonably be denied.  Indeed, D&S described them as such in a hearing.  That the period for discovery had not ended when the trial court executed its September 11th sanctions order is also beyond dispute.  Indeed, before then D&S itself had requested and caused the trial court to "reopen" and extend discovery to October 15, 2009.  Additionally, the order manifesting that new deadline was executed on August 7, 2009, or about a month before the "death penalty" sanction was issued.  And, by September 11th, Wyble had served D&S with a "Designation of Expert" and thereby supplied D&S with the supposedly outstanding information.  Thus, the premise underlying the sanction was non-existent.  Discovery had not closed and the response was supplemented before the death penalty sanction issued.[4]  Simply put, the trial court abused its discretion in entering the September 11th order.

*Summary Judgments Against Wyble*

Next, Wyble contends that the trial court erred in entering summary judgments favoring D&S.  We agree.

D&S twice moved for summary judgment against Wyble.  One was filed on June 22, 2009, and the other on September 23, 2009.  The order granting final summary judgment was executed on September 29, 2009, and upon which motion it acted went unspecified.  If it was the one filed on September 23rd, then granting it was error.  This is so because the earliest date upon which a trial court may hear a pending motion for

---

[4]That the trial court considered the decision to "reopen" discovery as implicitly negating its previously issued order denying Wyble the opportunity to proffer evidence on damages is illustrated by a comment uttered at a September 11, 2009 hearing.  There, it stated that "[a]s far as Ms. Wyble is concerned, I don't know what discovery reopening will do, but it may change everything and you may have to resubmit motions for Summary Judgment . . . . you may have allowed [her] to create factual issues . . . ."

6

summary judgment is twenty-one days after the motion is served on the non-movant. TEX. R. CIV. P. 166a(c); *Fertic v. Spencer,* 247 S.W.3d 242, 248 (Tex. App.–El Paso 2007, pet. denied). According to the certificate of service appearing on D&S' September 23rd motion, Wyble was served with the document on September 18, 2009. Needless to say, the time period between September 18th and the 29th is a mere eleven days, not the twenty one mandated by Rule 166a(c). Thus, the trial court could not have legitimately considered the September 23rd motion.

As for the June motion, D&S thought itself entitled to summary judgment because Wyble 1) was not a consumer under the Deceptive Trade Practices Act since Morgan allegedly sought and acquired the mobile home and 2) could proffer no evidence of damages.[5] Regarding the former, it has been clear for many years that being a consumer does not require some contractual nexus or privity to the underlying transaction. *Cook-Pizzi v. Van Waters & Rogers, Inc.* 94 S.W.3d 636, 644 (Tex. App.–Amarillo 2002, pet. denied); *McDuffie v. Blassingame*, 883 S.W.2d 329, 333 (Tex. App.–Amarillo 1994, writ denied). Rather, one need only be an intended beneficiary of the sale, lease, or service to qualify. *McDuffie v. Blassingame,* 883 S.W.2d at 333*; see Service Corp. Int'l v. Aragon*, 268 S.W.3d 112, 117 (Tex. App.–Eastland 2008, pet. denied) (holding that a third-party beneficiary can be a consumer if the transaction was specifically required by or intended to benefit the third party and the goods or service was rendered to benefit the intended beneficiary). And, family members who did not personally execute the agreement in question or pay for the services or goods obtained

---

[5]Though the issues specified in the motion for summary judgment are described in numerous ways, each focuses on Wyble's alleged inability to establish damages because she did not buy or pay for the mobile home.

may nonetheless be consumers. *See e.g., Service Corp. Int'l v. Aragon, supra* (involving the interment of a body in the wrong cemetery plot).

The summary judgment record before us contains evidence that Morgan and Wyble were common law husband and wife at the time the mobile home was purchased and the home was acquired for the family (*i.e.* Morgan, Wyble and her children) to live in. That is enough evidence tending to illustrate that the abode was specifically required by or intended to benefit Wyble and the children and rendered to benefit those same individuals; consequently, D&S failed to carry its summary judgment burden and prove as a matter of law that they were not consumers.

As for the purported lack of evidence regarding Wyble's damages, she testified during her deposition (a transcription of which was attached by D&S to its motion) that she was damaged in an amount equal to the value of a like home without the defects at issue. Furthermore, the value of such a home was $130,000. This alone is some evidence of damages, and its presence in the record negates the proposition of D&S that she could tender none.

The issues addressed above are dispositive of the appeal. Indeed, the others posed by Wyble and Morgan are dependent upon the legitimacy of the summary judgments and sanction order entered by the trial court. Accordingly, we reverse the final and summary judgments as well as the order denying Wyble the opportunity to proffer evidence of damages and remand the causes to the trial court.

Brian Quinn
Chief Justice