

# NUMBER 13-21-00453-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SCI TEXAS FUNERAL SERVICES, LLC
D/B/A FUNERARIA DEL ANGEL AND
ERNESTO ESTRADA,                                              Appellants,

v.

ANA BERTHA GONZALEZ,
ADRIANA GONZALEZ, BRITTNEY
MEDINA, AND ALEXIS MARIE MEDINA,                              Appellees.

## On appeal from the 464th District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Longoria

Appellants SCI Texas Funeral Services, LLC d/b/a Funeraria del Angel (SCI) and

Ernesto Estrada appeal from the trial court's denial of their motion to compel arbitration

and to stay suit pending arbitration. By one issue with multiple sub-issues, appellants contend the trial court erred by: (1) refusing to compel arbitration; (2) refusing to stay the litigation pending arbitration; and (3) overruling appellants' objections to Ana Bertha Gonzalez, Adriana Gonzalez, Brittney Medina, and Alexis Marie Medina, appellees', third amended petition. We reverse and remand.

## I.    BACKGROUND

Maria Gonzalez (decedent) passed away on June 22, 2019. According to appellees' original petition, decedent had paid for her final funeral arrangements with SCI prior to her death. On June 24, 2019, Anabel Gonzalez, decedent's adult daughter, entered into a contract with SCI for visitation and embalmment services for her mother. On June 26, 2019, a visitation was held for decedent at SCI's funeral home. Anabel and appellees, who are decedent's adult children and grandchildren, allege that during the visitation, the decedent's eye and mouth opened, leaking a foul-smelling fluid. Appellees assert that they informed Estrada, SCI's funeral director, of decedent's condition. According to appellees, Estrada and his assistant attempted to fix the issue with decedent's eye and mouth and replaced the pillow that was under decedent's head. Appellees allege that Estrada told them that "these things happen" and blamed an "unorthodox autopsy" for the issue. Appellees assert that the eye and mouth reopened during the remaining visitation hours.

In July 2020, appellees and Anabel filed their original petition against SCI alleging causes of action for negligence, intentional infliction of emotional distress, breach of fiduciary duty, and violations of the Deceptive Trade Practices Act (DTPA). SCI filed its

2

answer, generally denying the claims against it, and subsequently filed an amended answer adding that the parties were bound by an arbitration agreement. SCI then filed a motion to compel arbitration based on an arbitration clause in the underlying agreement signed by SCI and Anabel. SCI argued that "all plaintiffs are bound to arbitration" pursuant to the underlying agreement. SCI supported its motion to compel arbitration with, inter alia, the agreement and the affidavit of Abelardo Perez. The agreement stated, in relevant part:

> ARBITRATION: YOU AGREE THAT ANY CLAIM YOU MAY HAVE RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT (INCLUDING ANY CLAIM OR CONTROVERSY REGARDING THE INTERPRETATION OF THIS ARBITRATION CLAUSE) SHALL BE SUBMITTED TO AND FINALLY RESOLVED BY MANDATORY AND BINDING ARBITRATION IN ACCORDANCE WITH THE APPLICABLE RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA"); PROVIDED, HOWEVER, THAT THE FOREGOING REFERENCE TO THE AAA RULES SHALL NOT BE DEEMED TO REQUIRE ANY FILING WITH THAT ORGANIZATION, NOR ANY DIRECT INVOLVEMENT OF THAT ORGANIZATION. THE ARBITRATOR SHALL BE SELECTED BY MUTUAL AGREEMENT OF THE PARTIES. IF THE PARTIES FAIL TO OR ARE UNABLE TO AGREE ON THE SELECTION OF AN APPROPRIATE ARBITRATOR, THE AAA SHALL SELECT THE ARBITRATOR PURSUANT TO ITS RULES AND PROCEDURES UPON THE APPLICATION OF ONE OR BOTH PARTIES. THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY CLAIM OR DISPUTE BETWEEN OR AMONG THE SELLER, YOU AS THE PURCHASER, ANY PERSON WHO CLAIMS TO BE A THIRD[-]PARTY BENEFICIARY OF THIS AGREEMENT, ANY OF THE SELLER'S EMPLOYEES OR AGENTS, ANY OF THE SELLER'S PARENT, SUBSIDIARY, OR AFFILIATE CORPORATIONS, AND ANY OF THE EMPLOYEES OR AGENTS OF THOSE PARENT, SUBSIDIARY OR AFFILIATE CORPORATIONS. EXCEPT AS MAY BE REQUIRED BY LAW, NEITHER PARTY NOR AN ARBITRATOR MAY DISCLOSE THE EXISTENCE, CONTENT, OR RESULTS OF ANY ARBITRATION HEREUNDER WITHOUT THE PRIOR WRITTEN CONSENT OF BOTH PARTIES.

Anabel filed a notice of "nonsuit without prejudice" as to her claims against SCI.

3

Appellees then amended their petition, adding Estrada as a defendant and asserting claims of only negligence and intentional infliction of emotional distress against both defendants. Appellees also filed a response to SCI's motion to compel arbitration asserting there was no valid arbitration agreement between SCI and appellees.

Anabel's nonsuit was granted. SCI filed an amended motion to compel arbitration. Appellees filed a response to the amended motion, maintaining that they were not bound by any arbitration agreement signed by Anabel. On August 16, 2021, Anabel filed her first amended original petition with the American Arbitration Association regarding her claims against SCI. Appellants then filed their "Reply in Support of First Amended Motion to Compel Arbitration and to Stay Suit Pending Arbitration" arguing that (1) appellees were bound to arbitration and (2) litigation in the trial court should be stayed pending the outcome of the arbitration.

Shortly before a November 9. 2021 hearing on SCI's motion to compel arbitration, appellees filed another amended petition. After the hearing, SCI filed an objection to the late filing. Subsequently, the trial court entered an order denying and overruling appellants' objection to the amended petition and an order denying appellants' motion to compel arbitration. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (authorizing interlocutory appeals under the Federal Arbitration Act (FAA)); *id.* § 171.098(a)(1) (authorizing interlocutory appeals under the Texas Arbitration Act (TAA)). Appellants subsequently filed a motion for emergency stay of the trial court proceedings during the pendency of this accelerated appeal. Appellants argued that their right to arbitration would be diminished by incurring costs to respond to discovery in the

4

judicial proceedings which may not need to be incurred during arbitration. This Court granted appellants' request for emergency relief in part and ordered discovery to be stayed pending further order of this Court, or until the case is finally decided. *See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). Subsequently, appellees filed a brief and a "supplemental" brief, and appellants filed a reply and a supplemental brief.[1]

## II.    MOTION TO COMPEL ARBITRATION

Appellants argue in their first issue that the trial court erred by refusing to compel arbitration.

## A.    Standard of Review

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Henry*, 551 S.W.3d at 115. A trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Whether a valid arbitration agreement exists and whether the arbitration agreement is ambiguous are questions of law that we review de novo. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding).

---

[1] Appellees also filed an "advisory to the court" informing this Court that Anabel filed a notice of nonsuit with prejudice with the American Arbitration Association, to which appellants replied.

We review de novo whether an arbitration agreement is enforceable. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013). "Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018). Determining whether a claim involving a non-signatory must be arbitrated is a gateway matter for the trial court, not the arbitrator, which means the determination is reviewed de novo rather than with the deference that must be accorded to arbitrators. *Id.* at 629.

## B.    Analysis

Appellees do not dispute that the FAA applies to this dispute; rather they contend that, because the FAA applies, SCI should have challenged the trial court's denial of its motion to compel through mandamus rather than interlocutory appeal. We disagree. Appellants' interlocutory appeal is proper pursuant to § 51.016 of the Texas Civil Practice and Remedies Code which allows an interlocutory appeal of an order denying a motion to compel arbitration under the FAA. TEX. CIV. PRAC. & REM. CODE ANN. § 51.016; *see In re Santander Consumer USA, Inc.*, 445 S.W.3d 216, 219 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding that mandamus was not the appropriate remedy for the "wrongful denial of a motion to compel arbitration under the FAA" because § 51.016 confers a right to prosecute an interlocutory appeal of the trial court's order denying the motion to compel arbitration).

Applying the FAA in this case, a party seeking to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *Bonsmara Nat. Beef Co., v. Hart of Tex. Cattle*

6

*Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). If the movant establishes that an arbitration agreement governs the dispute, then the burden shifts to the party opposing arbitration to establish an affirmative defense to the arbitration agreement. *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) (per curiam).

### 1.      Enforceable Arbitration Agreement

Appellants assert that a valid, enforceable arbitration agreement exists because appellees are bound by the arbitration agreement in the contract as third-party beneficiaries. We have previously addressed a similar question in *SCI Texas Funeral Services, L.L.C. v. Montoya*, wherein we stated:

> Nonparties may be bound to a contract under various legal principles. *Bonsmara Nat. Beef Co.*[*v. Hart of Tex. Cattle Feeders, LLC*], 603 S.W.3d [385,] 400 [(Tex. 2020)]; *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005) (orig. proceeding). More specifically, non-signatories to an arbitration agreement may be bound when rules of law or equity would bind them to the contract generally. *In re Labatt Food Serv., L.P.*, 279 S.W.3d [640,] 644 [(Tex. 2009) (orig. proceeding)]. Courts have articulated six scenarios in which arbitration with non-signatories may be required: (1)incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Jody James Farms, JV*, 547 S.W.3d at 633; *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739. Direct benefits estoppel is a type of equitable estoppel. *Rachal* [*v. Reitz*], 403 S.W.3d [840,] 845–46 & n.5 [(Tex. 2013)].

No. 13-19-00088-CV, 2020 WL 5582367, at *5 (Tex. App.—Corpus Christi–Edinburg Sept. 17, 2020, no pet.) (mem. op.).

The contract at issue here states that it binds "any person who claims to be a third[-]party beneficiary of this Agreement."

> Like other contracts, arbitration agreements may be enforced against third-party beneficiaries if the parties to the contract intended to secure a benefit

7

to that third party and the parties entered the contract directly for the third party's benefit. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding); *see Jody James Farms, JV*, 547 S.W.3d at 635. The benefit must be more than incidental, and the contracting parties' intent to confer a direct benefit to a third party must be clearly and fully spelled out. *Jody James Farms, JV*, 547 S.W.3d at 635; *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). "[G]eneral beneficence does not create third-party rights." *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306–07 (Tex. 2007) (per curiam). Whether "the third party intended or expected to benefit from the contract" is irrelevant, because "only the 'intention of the contracting parties in this respect is of controlling importance.'" *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017); *see Jody James Farms, JV*, 547 S.W.3d at 635. As a matter of interpretation, "a mere description" of the contract's intended use cannot— on its own—confer third-party beneficiary status. *Jody James Farms, JV*, 547 S.W.3d at 635. Further, a "court will not create a third-party beneficiary contract by implication." *MCI Telecomms. Corp.*, 995 S.W.2d at 651.

*Id.* at *6.

To determine whether a contract secures a benefit to a third-party, we look solely to the language of the contract, construed as a whole. *First Bank*, 519 S.W.3d at 102. The contract need not state "third-party beneficiary" or any similar "magic words." *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011). We must begin with the presumption that the contracting parties intended to contract solely for themselves, and only a clear expression of intent to create a third-party beneficiary overcomes this presumption. *First Bank*, 519 S.W.3d at 103. If the language of the contract leaves any doubt about creating a third-party beneficiary, we resolve that doubt against conferring third-party beneficiary status. *Id.* A third-party beneficiary "steps into the shoes" of the contracting parties and is subject to and bound by all provisions of the contract. *Martinez v. ACCC Ins. Co.*, 343 S.W.3d 924, 929 (Tex. App.—Dallas 2011, no pet.); *see W. Loop Hosp., LLC v. Hous. Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 482 (Tex. App.—

8

Houston [1st Dist.] 2022, pet. denied), reh'g denied (May 19, 2022); *In re Rangel*, 45 S.W.3d 783, 787 (Tex. App.—Waco 2001, no pet) (orig. proceeding) (stating that a third-party beneficiary is bound by the terms of the contract, including an arbitration provision).

The contract at issue states that the agreement to arbitrate "applies to any claim or dispute between or among . . . any person who claims to be a third party beneficiary of this agreement." While appellees were not signatories to the contract, it has been held that contracts for funeral services can be intended for the benefit of immediate family members of the deceased. *See Serv. Corp. Intern. v. Aragon*, 268 S.W.3d 112, 117 (Tex. App.—Eastland 2008, pet. denied) (finding that it was reasonable to conclude that interment services were intended for the benefit of the deceased's immediate family (citing *Clark v. Smith*, 494 S.W.2d 192 (Tex. App.—Dallas 1973, writ ref'd n.r.e.)); *see also Montoya*, 2020 WL 5582367, at *6. Here, appellees are all immediate family members of the deceased. *See Aragon*, 268 S.W.3d at 117. Accordingly, we find that the appellees were intended to receive a benefit through the contract. Therefore, a valid arbitration agreement exists. *See Tex. Cattle Feeders, LLC*, 603 S.W.3d at 397.

### 2. Scope of the Agreement

We must next determine whether the claims at issue fall within the scope of the agreement. *See In re Kellogg*, 166 S.W.3d at 737; *see also Montoya*, 2020 WL 5582367, at *6.

"[A] nonparty may be compelled to arbitrate 'if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provisions.'" *Weekley*, 180 S.W.3d at 131 (citing *Kellogg*, 166 S.W.3d at 741).

9

To determine whether a claim falls within the scope of the agreement, courts must focus on the factual allegations of the pleadings rather than the legal causes of action asserted. *See Henry*, 551 S.W.3d at 115; *In re Rubiola*, 334 S.W.3d [220,] 225 [(Tex. 2011)]; *In re FirstMerit Bank* [*N.A.*], 52 S.W.3d [749,] 754 [(Tex. 2001) (orig. proceeding)]; [*Prudential Sec. Inc. v.*] *Marshall*, 909 S.W.2d [896,] 900 [(Tex. 1995) (orig. proceeding) (per curiam)]. Claims must be submitted to arbitration if "liability arises solely from the contract or must be determined by reference to it." *In re Weekley Homes, L.P.*, 180 S.W.3d at 132; *Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 77 (Tex. App.—Texarkana 2014, no pet.). If the facts alleged touch matters, have a significant relationship to, are inextricably enmeshed with, or are factually intertwined with the contract containing the arbitration agreement, then the claim is arbitrable. *Rodriguez v. Tex. Leaguer Brewing Co.*, 586 S.W.3d 423, 432 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 105 (Tex. App.—San Antonio 2016, no pet.); *Glassell Producing Co.*, 422 S.W.3d at 77; *Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 108 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In contrast, a "claim is not subject to arbitration only if the facts alleged in support of the claim are completely independent of the contract and the claim could be maintained without reference to the contract." *Glassell Producing Co.*, 422 S.W.3d at 78; *see Cotton Commercial USA, Inc.*, 387 S.W.3d at 108.

*Montoya*, 2020 WL 5582367, at *8.

Here, appellees' live pleading alleges causes of action for negligence and intentional infliction of emotional distress. Within the claim for negligence, appellees listed several acts they allege constituted negligence on appellants' part:

a. In failing to properly embalm Decedent;

b. In failing to take alternative steps to avoid damaging Decedent's body;

c. In failing to exercise due care in order to avoid leakage of embalming fluid/blood from Decedent's mouth, ears, nose and eyes;

d. In failing to properly store Decedent's body;

e. In failing to properly care for Decedent's body, as would a person using ordinary care under the same or similar circumstances; and

10

f.    The acts of negligence will be shown at the trial of this matter.

The factual allegations in the live petition entirely reference the handling of the decedent's remains in preparation for the funeral services, the subject of the contract at issue. Specifically, the contract provides that appellants were authorized "to prepare and care for the body of the decedent named in [the] Agreement and to conduct the funeral and services . . . listed in said Agreement."

There is a presumption favoring arbitration and a policy to construe arbitration clauses broadly. *See Henry*, 551 S.W.3d at 116. The arbitration clause here states that it applies to "any claim or dispute" and the allegations of appellees touch matters, have a significant relationship with, or are inextricably enmeshed or factually intertwined with the contract. *See Rodriguez*, 586 S.W.3d at 432; *Amateur Athletic Union of the U.S., Inc.*, 499 S.W.3d at 105; *see also Montoya*, 2020 WL 5582367, at *9. Because we cannot say with "positive assurance that the arbitration agreement is not susceptible to an interpretation that would cover the appellees' claims," we conclude that the trial court abused its discretion by denying appellants' motion to compel arbitration. *See Henry*, 551 S.W.3d at 115; *In re Rubiola*, 334 S.W.3d at 225; *Prudential Sec. Inc.*, 909 S.W.2d at 899; *see also Montoya*, 2020 WL 5582367, at *9. We sustain appellants' first sub-issue.

### III.    STAY PENDING ARBITRATION

Appellants argue in their second issue that the trial court erred in denying their motion to stay litigation pending arbitration. The FAA requires courts to stay litigation of issues that are subject to arbitration. *See* 9 U.S.C.A. § 3; *In re Merrill Lynch & Co., FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (orig. proceeding). The Texas Supreme Court has held

11

that when an issue is pending in both arbitration and litigation, arbitration should be given priority to the extent it is likely to resolve issues material to the lawsuit. *In re Merrill Lynch & Co.*, 315 S.W.3d 888, 891 (Tex. 2010) (orig. proceeding) (per curiam); *In re Merrill Lynch Co., FSB*, 235 S.W.3d at 195; *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 500 (Tex. App.—Dallas 2011, pet. denied); *see also Montoya*, 2020 WL 5582367, at *10.

Having already determined that the trial court erred in denying appellants' motion to compel arbitration, the trial court must stay any further proceedings in the trial court. *See* 9 U.S.C.A. § 3 (requiring stay of proceedings in trial court "upon any issue referable to arbitration"); *In re Merrill Lynch & Co., FSB*, 235 S.W.3d at 195; *In re James E. Bashaw & Co.*, 305 S.W.3d 44, 57 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding).

We sustain appellants' second sub-issue.[2]

## IV.    CONCLUSION

We conclude that the trial court erred in refusing to compel arbitration and denying appellants' motion to stay. Accordingly, we lift the stay that we previously imposed in this case. We reverse the trial court's order denying arbitration, and we remand the case with instructions that the trial court proceeding be stayed and that the parties be compelled to arbitrate.

NORA L. LONGORIA
Justice

Delivered and filed on the
25th day of May, 2023.

---

[2] We note appellants raise a third sub-issue in which they challenge the trial court's overruling of their objections to appellees' third amended original petition. Because appellants' first two sub-issues are dispositive, we need not address the objections to the third amended petition. *See* TEX. R. APP. P. 47.1.

To the extent appellants' sub-issue relates to the arbitration proceedings brought by Anabel, we note that Anabel has non-suited her arbitration claims and the issue as it relates to her claims is moot.