

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-15-00268-CV

**AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC.**,
Paul Campbell, Rod Seaford, and Charles Oliver,
Appellants

v.

Augustus **BRAY**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-10872
Honorable David A. Canales, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:         Karen Angelini, Justice
                 Rebeca C. Martinez, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed:  July 6, 2016

REVERSED AND REMANDED

The Amateur Athletic Union of the United States, Inc. ("AAU") and Paul Campbell, Rod Seaford, and Charles Oliver, all of whom are AAU officers (collectively, the "Individual Defendants") appeal the trial court's order denying their motion to compel arbitration in a lawsuit brought by AAU volunteer and officer Augustus Bray. Because we conclude that the arbitration agreement contained in the AAU National Policies is valid and enforceable against Bray, except for the prohibition against punitive damages, and that Bray's claims fall within the scope of the

agreement, we reverse the trial court's order denying the motion to compel arbitration and remand the cause with instructions to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

Augustus Bray was a thirty-year volunteer for the AAU, a non-profit volunteer sports organization, and had served as Governor of the South Texas District since his election in 2005. The incident giving rise to the current lawsuit occurred in August 2012 at an AAU-sponsored track meet in Houston, Texas which Bray, Campbell, and Oliver attended in the course and scope of their respective AAU officer roles. Bray was assigned to the Jury of Appeals, which resolves any protests lodged during the track meet. While Bray was sitting in the press box, a woman attempted to squeeze past him and Bray made contact with the woman's body. According to Bray, Oliver — the Meet Director — told the woman to contact the police department and file charges. Campbell, the Junior Olympic Event Director, allegedly made a statement in front of a group of people that Bray was being charged with sexual assault and that according to AAU policies his AAU membership was to be immediately terminated. Bray also claimed that Oliver and Campbell coerced Marv Allen, another AAU member present at the time of the incident, to make false statements against Bray, which Allen later recanted. The police arrested Bray and escorted him from the track meet. Bray was charged with the criminal offense of "assault by contact," but the charge was later dismissed.

Bray submitted written complaints to the AAU National Board of Review (the "Board") alleging that Oliver's and Campbell's conduct violated AAU rules. The Board resolves complaints alleging violations of the AAU Code or AAU sport operating rules. Bray contends the Board, chaired by Seaford, failed to exercise its powers and failed to investigate Bray's complaints before dismissing them. Bray appealed the Board's dismissal of his complaints to the AAU National Board of Appeals, which sustained the dismissal.

After exhausting the AAU's administrative appeals process, Bray filed suit on July 10, 2014 against Campbell, Oliver, and Seaford alleging claims for negligence, intentional infliction of emotional distress, defamation, aiding and abetting, and conspiracy arising out of the August 2012 incident at the track meet. Bray also alleged the Individual Defendants were "acting in the scope of their employment and in furtherance of AAU's business," and that the AAU was liable for their conduct under the theory of respondeat superior. Bray sought recovery of actual and special damages, past and future medical expenses, past and future physical pain and suffering, past and future mental anguish, economic damages, and exemplary damages.

The AAU and Individual Defendants filed a motion to compel arbitration under the AAU National Policies and to abate the trial court proceedings pending arbitration. The AAU National Policies contain a "Binding Arbitration" provision in Section I(B), under "Membership Policies," which is set forth in bold, underlined, capital letters and conspicuously placed on the first page. In relevant part, the provision states, "**<u>BY APPLYING FOR AAU MEMBERSHIP . . . OR UPON ENTERING ANY AAU EVENT, THE APPLICANT/MEMBER/ENTRANT AND THE AAU AGREE TO SUBMIT ALL CIVIL DISPUTE(S) TO BINDING ARBITRATION</u>**." The arbitration agreement states that the parties agree to submit the dispute to an arbitrator pursuant to American Arbitration Association (AAA) rules, the Federal Arbitration Act (FAA), and the Arbitration Code of Florida, where the AAU national office is located. The arbitration agreement also contains a forum selection clause requiring that arbitration be conducted in the county where the AAU's national office is located.

The arbitration agreement provides that the successful party is entitled to recover its actual and consequential damages, but expressly prohibits the recovery of punitive or exemplary damages, stating, "**<u>IT BEING THE INTENT OF THE PARTIES TO HEREBY WAIVE ANY RIGHT TO SEEK AND THE PARTIES HEREBY COVENANT NOT TO SEEK, ANY</u>**

**PUNITIVE OR EXEMPLARY DAMAGES** . . . ." The agreement does not address the recovery of the costs of arbitration. Finally, the agreement contains a severability clause stating that if any portion of the arbitration agreement is declared invalid or unenforceable, the rest of the agreement shall remain in full force and effect.

In opposing the motion to compel arbitration in the trial court, Bray asserted the arbitration clause is not a valid and enforceable agreement because: (1) neither he nor any of the Individual Defendants are signatories to the arbitration agreement; (2) his tort claims fall outside the scope of the arbitration agreement because they stand apart from the contract, i.e., the AAU National Policies and Code; (3) the arbitration agreement is illusory because the AAU can avoid its obligation to arbitrate by unilaterally amending or terminating the agreement without prior notice; and (4) the agreement is unconscionable because it imposes excessive fees and travel costs, and provides insufficient remedies by prohibiting exemplary damages.

After a hearing, the trial court denied the motion to compel arbitration in a general order. The trial court made no specific findings. The AAU and Individual Defendants now appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015) (authorizing an interlocutory appeal of the denial of a motion to compel arbitration under the Federal Arbitration Act in suits filed after September 1, 2009).

## ANALYSIS

On appeal, the AAU and Individual Defendants assert the trial court abused its discretion in denying their motion to compel arbitration because they met their burden to prove the arbitration agreement is valid and enforceable and encompasses the claims Bray asserted, and Bray failed to establish a defense to enforcement of the arbitration agreement.

*Standard of Review*

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion, deferring to the court's factual determinations supported by the record but reviewing legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *Schmidt Land Servs., Inc. v. Unifirst Corp.*, 432 S.W.3d 470, 472 (Tex. App.—San Antonio 2014, pet. denied). Whether a valid arbitration agreement exists and is enforceable are legal determinations subject to de novo review. *In re Labatt*, 279 S.W.3d at 643; *J.M. Davidson*, *Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Whether the scope of an arbitration agreement encompasses the claims in dispute is also a question of law reviewed de novo. *Henry v. Gonzalez*, 18 S.W.3d 684, 691 (Tex. App.—San Antonio 2000, pet. dism'd). When the trial court makes no specific findings or conclusions in support of its order, the reviewing court upholds the trial court's ruling if there is a sufficient basis under any legal theory asserted in the trial court. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam) (citing *Lassiter v. Bliss*, 559 S.W.2d 353, 346 (Tex. 1997)).

*Applicable Law (FAA)*

A party seeking to compel arbitration under the FAA bears the burden of establishing (1) the existence of a valid and enforceable agreement to arbitrate, and (2) that the claims at issue fall within the scope of the arbitration agreement. *In re Rubiola*, 334 S.W.3d 220, 223-24 (Tex. 2011); *In re Dillard Dept. Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006). Under the FAA, ordinary principles of state contract law apply in determining whether a valid agreement to arbitrate exists. *In re Rubiola*, 334 S.W.3d at 224 (agreement to arbitrate is valid if it meets general contract law requirements of the state); *see J.M. Davidson*, 128 S.W.3d at 227 (in construing a written contract, the primary concern of Texas courts is to ascertain the true intentions of the parties as expressed in the instrument as a whole).

When determining whether a particular claim falls within the scope of an arbitration agreement, courts employ a strong presumption in favor of arbitration. *In re Rubiola*, 334 S.W.3d at 225; *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) ("any doubts as to whether . . . claims fall within the scope of the agreement must be resolved in favor of arbitration" under the FAA). However, the presumption in favor of arbitration arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson*, 128 S.W.3d at 227. To determine whether a claim falls within the scope of the agreement, courts focus on the factual allegations in the plaintiff's petition, rather than the legal causes of action asserted, and the terms of the arbitration agreement. *In re Rubiola*, 334 S.W.3d at 225; *In re Labatt*, 279 S.W.3d at 643 (federal law generally governs the scope of an arbitration agreement).

If the party seeking arbitration meets its two-pronged burden to show the agreement's validity and scope, the party opposing arbitration then has the burden to raise an affirmative defense to enforcement of the arbitration agreement. *J.M. Davidson*, 128 S.W.3d at 227; *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014). A party opposing arbitration can raise a contract-formation defense, arguing that no agreement to arbitrate was ever formed, or a contract-validity defense such as fraud, unconscionability, duress, or illusory contract. *See In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 187 (Tex. 2009) (contract-formation defense); *see id.* at 185 (contract-validity defense); *see also In re Olshan Found. Repair Co. LLC*, 328 S.W.3d 883, 891-92 (Tex. 2010). The party opposed to arbitration may also assert that his claims fall outside the scope of the arbitration agreement. *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013); *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).

Because the trial court signed a general order denying the AAU's motion to compel arbitration, we will address each objection raised by Bray in the trial court upon which the order could have been based. *Lassiter*, 559 S.W.2d at 346; *In re W.E.R.*, 669 S.W.2d at 717.

### _Valid and Enforceable Arbitration Agreement_

### _Non-Signatories_

The AAU and Individual Defendants argue on appeal that they proved the existence of a valid and enforceable arbitration agreement which binds Bray through his membership and role as an officer in the AAU. Bray argued in the trial court that neither he nor the three Individual Defendants personally signed or agreed to be individually bound by the arbitration agreement contained in the AAU National Policies and Code. Therefore, Bray asserted that, as non-signatories, the Individual Defendants cannot enforce arbitration and he cannot be compelled to arbitrate. Whether a non-signatory can compel arbitration, or be compelled to arbitrate, goes to the existence of a valid arbitration clause and is a gateway matter for the court to decide and which we review de novo. _In re Rubiola_, 334 S.W.3d at 224; _In re Labatt_, 279 S.W.3d at 643 (citing _In re Weekley Homes, L.P._, 180 S.W.3d 127, 130 (Tex. 2005)).

Under the FAA, ordinary principles of state contract law govern whether there is a valid agreement to arbitrate. _In re Rubiola_, 334 S.W.3d at 224; _In re Kellogg Brown & Root, Inc._, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding). Generally, parties must sign an arbitration agreement before being bound by it. _In re Rubiola_, 334 S.W.3d at 224. However, neither the FAA nor Texas law requires that an arbitration agreement be signed as long as it is in writing and agreed to by the parties. _See_ 9 U.S.C. § 2; _see also In re AdvancePCS Health L.P._, 172 S.W.3d 603, 606 (Tex. 2005) (per curiam) (arbitration clause contained in an insurer's provider agreement was binding even though the member pharmacies signed only the membership and network enrollment forms); _see also In re Halliburton Co._, 80 S.W.3d 566, 569 (Tex. 2002) (holding arbitration clause was accepted by continued employment). Thus, an obligation to arbitrate may attach not only to one who has personally signed the written arbitration agreement, but may also bind a non-signatory under principles of contract law and agency. _In re Rubiola_, 334 S.W.3d at 224 (citing _In re Kellogg_

*Brown & Root*, 166 S.W.3d at 738). Therefore, non-signatories to an arbitration agreement can sometimes compel arbitration or be compelled to arbitrate. *In re Labatt*, 279 S.W.3d at 643; *see, e.g., In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) (per curiam) (non-signatory corporate parent and non-signatory admissions director could enforce broad arbitration clause in enrollment agreement between college and students). Arbitration agreements, like other contracts, are enforced according to their terms and the intentions of the parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995). "[T]he question of '[w]ho is actually bound by an arbitration agreement is [ultimately] a function of the intent of the parties, as expressed in the terms of the agreement.'" *In re Rubiola*, 334 S.W.3d at 224 (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355, 358 (5th Cir. 2003)).

As previously noted, the arbitration agreement is contained in the AAU National Policies and incorporated into the AAU Code. None of the individual parties personally signed the arbitration agreement. However, Bray and the Individual Defendants did sign membership applications renewing their AAU membership each year, and also served as officers of the AAU. The AAU membership application expressly states that a member agrees to be bound by the AAU National Polices and Code. In addition, the record contains two AAU documents signed by Bray in his capacity as Governor of the South Texas District: (i) the 2012 District Charter Application which contains a paragraph above Bray's signature stating, "[i]n submitting this application and paying the annual charter fee, the District and its officers and members agree to be bound by the AAU Code, including its operating policies and procedures;" and (ii) a 2012 request and consent by the South Texas District to be listed as a subordinate of the AAU and a group tax exemption that included a section stating that the South Texas District would be bound by the AAU Code. In addition, Bray, Campbell, and Oliver were present at the track meet in their official roles with the AAU. Bray initially filed his complaints against Campbell and Oliver with the AAU and followed

the AAU administrative procedures for resolution of his complaint and his appeal. Seaford's only involvement in the dispute with Bray was in his official role as Chairman of the AAU National Board of Review. By invoking and exhausting the AAU administrative complaint process set forth in the AAU National Policies, Bray acknowledged that the National Policies, including the arbitration clause, apply to the "civil dispute" at issue.

With respect to the Individual Defendants, Bray alleges in his petition that all of their challenged actions were "within the scope of their employment and in furtherance of the AAU's business" and he invokes *respondeat superior* to hold the AAU liable for the Individual Defendants' acts. Based on Bray's factual allegations in the petition, the actions and statements by the three Individual Defendants all occurred either at the AAU-sponsored track meet (Oliver and Campbell) or during the AAU appeals process (Seaford). Under the doctrine of *respondeat superior*, an employer or principal may be vicariously liable for the tortious acts of any employee or agent acting within the scope of the employment or agency, even though the principal or employer did not itself commit a wrong. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541-42 (Tex. 2002). "When the principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are covered by that agreement." *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 556 (Tex. App.—San Antonio 2003, orig. proceeding) (quoting *McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 481 (Tex. App.—Dallas 2001, orig. proceeding)). "The scope of an arbitration agreement may be extended to claims against agents of the principal when all the agents' allegedly wrongful acts relate to their behavior as agents of the principal signatory company, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal would be liable." *In re Merrill Lynch*, 123 S.W.3d

at 556. Here, according to Bray's own factual allegations, the Individual Defendants were acting as agents of the AAU when they engaged in the conduct upon which Bray's claims are based.[1]

We therefore conclude that, under the principles of contract law and agency discussed above, Bray, the Individual Defendants, and the AAU were all obligated to arbitrate Bray's claims under the AAU National Policies.

### *Scope of the Agreement*

The AAU and Individual Defendants also argue they established that Bray's tort claims fall within the scope of the arbitration agreement and do not stand apart from the AAU National Policies and Code. As quoted above, the arbitration agreement is very broad in scope, encompassing "all civil disputes." Under a broad arbitration clause, arbitration can be compelled even though the particular dispute is not specifically covered. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006). For example, an agreement to arbitrate "all disputes" arising from a contract may encompass some tort claims. *See Merrill Lynch v. Wilson*, 805 S.W.2d 38, 39 (Tex. App.—El Paso 1991, no writ). If the facts alleged in support of the claim have a "significant relationship" to or are "factually intertwined" with the contract that is subject to the arbitration agreement, then the claim is within the scope of the arbitration agreement and is arbitrable. *See In re Dillard Dept. Stores*, 186 S.W.3d at 515 (arbitration clause in employment contract covered defamation claim); *Pennzoil Co. v. Arnold Oil Co., Inc.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, orig. proceeding). If the facts alleged stand alone and are completely independent of the contract, the claim is not subject to arbitration. *Pennzoil*, 30 S.W.3d at 498.

---

[1] Bray stresses that Section 1(I) of the AAU National Policies states, "Membership in the AAU does not create an agency relationship." However, as noted, Bray and the Individual Defendants were not merely members of the AAU, but were officers of the AAU.

Focusing on the factual allegations in Bray's petition, rather than the legal causes of action asserted, it is apparent that all of Bray's claims against Oliver and Campbell arise out of their actions in accusing Bray of committing sexual misconduct at the AAU-sanctioned track meet. Section I(E) of the AAU National Policies expressly addresses the bases upon which a member's participation in the AAU may be denied on the basis of sexual misconduct. It provides that, "It is the policy of the AAU to deny participation in the AAU to any individual for whom there is reasonable cause to believe that they have engaged in sexual misconduct." It then provides that "reasonable cause" exists when (1) criminal or civil charges alleging sexual misconduct have been filed against the person, (2) the person has been convicted of a crime involving sexual misconduct, (3) written allegations of sexual misconduct with reasonable probative value have been submitted to the AAU, or (4) the person has been accused of sexual misconduct and the accusation has reasonable probative value.

Oliver and Campbell were present at the track meet in their capacity as AAU officers, specifically as the Meet Director and Junior Olympic Event Director, and acted within those roles in dealing with Bray after the accusation of sexual misconduct. Bray's allegations against Seaford are that he failed to investigate Bray's complaint before dismissing it. Seaford's conduct occurred solely within the scope of his role as Chairman of the AAU National Board of Appeals. Bray's petition also includes a factual allegation that Oliver violated the AAU Code and Handbook because he "has allowed members to circumvent the intent and historical application of the AAU Athletics Handbook as well as the AAU Code by openly awarding medals/awards to participants five or more hours prior to the event. . . . in direct violation of the 'participation' rule in the AAU Athletics Handbook . . . ." Thus, all of the claims raised by Bray arise out of actions taken by the Individual Defendants in their roles as AAU officers, whether at the AAU-sponsored track meet or in the course of the administrative appeal of Bray's complaint. As such, the claims are factually

intertwined with the contract at issue, and do not arise separate and apart from the AAU policies and rules; therefore, Bray's claims fall within the scope of the arbitration agreement contained in the AAU National Policies and Code. *See Marshall*, 909 S.W.2d at 899 (doubts regarding whether claims fall within scope of arbitration agreement are resolved in favor of arbitration once valid agreement is proven to exist); *J.M. Davidson*, 128 S.W.3d at 227.

### *Conclusion*

We conclude that, as the parties seeking to compel arbitration, the AAU and the Individual Defendants met their burden to establish the existence of a valid arbitration agreement governing the instant dispute. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (orig. proceeding).

### Defense to Enforcement of Arbitration Agreement

We now turn to whether Bray, as the party seeking to avoid arbitration, met his burden to prove a defense against enforcement of the otherwise valid arbitration agreement. *Id.*; *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001). As noted, Bray raised two affirmative defenses to enforcement of the arbitration clause in the trial court, asserting the agreement is illusory and unconscionable.

### *Illusory Agreement*

Bray asserted the arbitration agreement is illusory, and thus invalid, because it contains no restriction on the AAU's ability to unilaterally amend or terminate the arbitration agreement, thereby allowing the AAU to avoid its promise to arbitrate; he asserts there is no mutual obligation to arbitrate and thus, no consideration. He contends a savings clause in the agreement was necessary to prevent the agreement from being illusory. *See Halliburton*, 80 S.W.3d at 569-70 (employer's promise to arbitrate was not illusory because arbitration agreement contained a "savings clause" requiring prior notice of changes and making changes prospective). Because the

arbitration agreement does not contain such a savings clause, Bray asserts the agreement is unenforceable.

Arbitration agreements are subject to ordinary contract principles, and thus must be supported by consideration, or mutuality of obligation, to be enforceable. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding). Mutual promises to submit all disputes to arbitration provide sufficient consideration for an arbitration agreement. *In re Odyssey Healthcare*, 310 S.W.3d at 424. An arbitration clause is illusory when one party can avoid its promise to arbitrate by amending the provision or terminating it altogether. *In re 24R*, *Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (per curiam) (promise is illusory when promisor retains the option to discontinue performance). With respect to stand-alone arbitration agreements, binding promises to arbitrate by both sides constitute the only consideration to create the contract. *In re AdvancePCS*, 172 S.W.3d at 607. However, when an arbitration clause is part of an underlying contract, the remainder of the parties' agreement provides the consideration for the arbitration agreement. *Id.*; *In re Palm Harbor Homes*, 195 S.W.3d at 676-77.

The arbitration agreement here contains no restrictions on the AAU's ability to amend or terminate it, and the parties agree the AAU has amended the provision twice in the past, most recently in March 2009. However, the arbitration agreement is not a stand-alone contract, but rather is part of a much broader underlying contract, i.e., the AAU National Policies and Code, that governs the conduct of all AAU members. Bray repeatedly renewed his AAU membership, and enjoyed the benefits and bore the obligations of such membership for over thirty years. In addition, Bray was elected and served as Governor of the South Texas District, and was then re-elected to another four-year term after the March 2009 amendment, thereby indicating his acceptance of the amended arbitration provision. Further, Bray's actions in following the internal AAU procedure and exhausting his administrative remedies before filing the underlying lawsuit

constitute an acknowledgment that the terms of the AAU National Policies and Code govern resolution of his claims in this civil dispute. We conclude that the remainder of the underlying contract formed by the AAU National Policies and Code provides sufficient consideration and mutuality of obligation for the arbitration agreement, and the agreement is not illusory. *See In re AdvancePCS*, 172 S.W.3d at 607; *see also Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 853-54 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd).

### *Unconscionable Agreement*

Next, Bray asserted the arbitration agreement was not enforceable because it is procedurally and substantively unconscionable. "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015); *In re Palm Harbor Homes*, 195 S.W.3d at 677. Unconscionable contracts, whether relating to arbitration or not, are unenforceable under Texas law. *In re Poly-Am.*, 262 S.W.3d at 348. A party seeking to avoid arbitration on unconscionability grounds bears the burden of proof. *Halliburton*, 80 S.W.3d at 572.

Bray argued that the arbitration agreement is procedurally unconscionable because he did not sign the agreement and it is illusory due to a lack of mutuality. We have already rejected both of these arguments.

With respect to substantive unconscionability, Bray contended the costs of arbitrating in Florida, as required by the agreement, would be excessive and would impose an unfair financial burden on him. He also asserted that the agreement's prohibition against punitive damages deprived him of a full remedy. We first address the issue of excessive costs. When the costs imposed by an arbitration agreement are excessive and effectively prevent a party from asserting his rights in an arbitration proceeding, the arbitration agreement may be substantively

unconscionable. *In re Olshan*, 328 S.W.3d at 893; *In re Palm Harbor Homes*, 195 S.W.3d at 677. The party opposing arbitration on the basis of excessive costs has the burden to show the costs of arbitration would be prohibitively expensive and must submit specific evidence showing the likelihood of incurring such costs for the particular arbitration. *In re Olshan*, 328 S.W.3d at 893, 895 & n.5. Such specific evidence can consist of invoices, expert testimony, reliable cost estimates, or other comparable evidence. *Id.* at 895; *BBVA Compass Inv. Solutions, Inc. v. Brooks*, 456 S.W.3d 711, 724 (Tex. App.—Fort Worth 2015, no pet.). In determining whether the costs of arbitration are excessive, courts apply a case-by-case analysis and focus on the following factors: (1) the party's ability to pay the arbitration fees and costs; (2) the actual amount of the fees compared to the amount of the underlying claim(s); (3) the expected cost differential between arbitration and litigation; and (4) whether that cost differential is so substantial that it would deter a party from bringing a claim. *In re Olshan*, 328 S.W.3d at 893-94. A comparison of the total costs of the two forums, litigation and arbitration, is the most important factor. *Id.* at 894-95; *Brooks*, 456 S.W.3d at 724.

Here, Bray attached his affidavit to his post-hearing brief stating that the costs of arbitration would be a "serious financial burden," but he provided no supporting evidence or documentation concerning his financial ability or inability to pay the arbitration fees and costs. The only information submitted with respect to the actual amount of arbitration fees and costs was a copy of a travel package quote for $588 from Southwest Airlines' website for a particular weekend in April 2015 and the AAA chart showing the initial and final arbitration fees of $750 and $800, and the general hourly fees between $200-$500 for an arbitrator; there was no evidence of the actual amount of fees for this particular arbitration. Bray's affidavit also described his claimed damages totaling $9,780. Other than his conclusory statement that paying the costs of arbitration would create a financial burden on him, Bray did not establish the estimated costs of proceeding with

litigation of his claims, the cost differential between arbitration and litigation, or show that such differential is so great that it would deter him from bringing his claims. *See In re Olshan*, 328 S.W.3d at 893-94. "Evidence that merely speculates about the risk of possible cost is insufficient." *Id.* at 895. We conclude Bray failed to meet his burden to provide specific evidence on the four relevant factors with respect to the costs of this particular arbitration. *See id.*; *see also In re Odyssey Healthcare*, 310 S.W.3d at 422-23 (even if being forced to arbitrate in a different city would cause substantial expense, plaintiff did not prove that such costs were likely); *Brooks*, 456 S.W.3d at 724 (record contained no specific evidence that excessive arbitration fees would actually be charged).

Finally, Bray asserted the arbitration agreement is unconscionable due to its prohibition against the recovery of punitive or exemplary damages. Bray pled for recovery of exemplary damages pursuant to section 41.003(a)(2) of the Civil Practice and Remedies Code based on the Individual Defendants having acted with malice. That statute authorizes the award of exemplary damages if "the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from . . . malice." TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(2) (West 2015). Because the portion of the arbitration agreement prohibiting punitive damages eliminates a statutory remedy that is available as a matter of public policy upon proof of malicious conduct, we conclude that provision is unconscionable and unenforceable. Pursuant to the arbitration agreement's severability clause, the provision prohibiting punitive damages is hereby severed from the remainder of the valid and enforceable arbitration agreement. *See In re Poly-Am.*, 262 S.W.3d at 351-52, 360 (provision of arbitration agreement that eliminated the reinstatement and punitive damages remedies available under the anti-retaliation provisions of Worker's Compensation Act was unconscionable and was severed pursuant to severability clause of the agreement); *see also Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478

(5th Cir. 2003) (severing unconscionable clause prohibiting award of punitive damages); *Sec. Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292, 300-01 (Tex. App.—San Antonio 2008, no pet.) (severing arbitration agreement's provision waiving right to recover attorney's fees under DTPA).

### *Conclusion*

Except for the unconscionable punitive damages prohibition, we conclude Bray failed to carry his burden to establish a defense to enforcement of the otherwise valid arbitration agreement.

### CONCLUSION

Based on the foregoing reasons, we hold that the trial court erred in denying the motion to compel arbitration urged by the AAU and the Individual Defendants, and we reverse the trial court's order denying the motion to compel arbitration and remand for entry of an order compelling arbitration and staying further proceedings in the underlying cause.  As stated above, the portion of the arbitration agreement prohibiting recovery of punitive or exemplary damages is unconscionable and is severed from the remainder of the otherwise valid and enforceable arbitration agreement.

Rebeca C. Martinez, Justice