

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00644-CV

**UTILITY TRAILER SALES SOUTHEAST TEXAS, INC.,**
Appellant

v.

Hector L. **LOZANO** and Mary E. Short,
Appellees

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2015CVT003881 D3
Honorable Rebecca Ramirez Palomo, Judge Presiding

Opinion by:     Marialyn Barnard, Justice
Dissenting Opinion by: Irene Rios, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Irene Rios, Justice

Delivered and Filed:  July 19, 2017

REVERSED AND REMANDED

  Utility Trailer Sales Southeast Texas, Inc. ("UTS") appeals the trial court's order denying its motion to compel arbitration.  We reverse the trial court's order and remand the cause to the trial court with instructions to sign an order compelling arbitration and staying the pending litigation.

## BACKGROUND

Hector L. Lozano was first employed by UTS on May 3, 2010. Lozano quit his employment in October of 2012, but was rehired by UTS on May 3, 2013. Lozano was injured on the job in 2014, and sued UTS for negligence. UTS filed a motion to compel arbitration.

In response to UTS's motion, Lozano admitted he signed an arbitration acknowledgment, agreeing to arbitrate any claims against UTS pursuant to a Mutual Agreement to Arbitrate Claims (the "2010 Arbitration Agreement"), when he was first hired in 2010. Lozano disputed, however, that he signed a second arbitration acknowledgment when he was rehired by UTS in 2013. UTS presented evidence in an effort to prove Lozano signed a second arbitration acknowledgment in 2013. After hearing the evidence, the trial court signed an order denying UTS's motion to compel. UTS appeals.

## STANDARD OF REVIEW

An appellate court reviews a trial court's order denying a motion to compel arbitration for an abuse of discretion, deferring to the trial court's factual determinations if they are supported by the record and reviewing legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009); *Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 102 (Tex. App.—San Antonio 2016, no pet.). Whether a valid arbitration agreement exists is a legal determination subject to de novo review. *Labatt Food Serv., L.P.*, 279 S.W.3d at 643; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Amateur Athletic Union of the U.S., Inc.*, 499 S.W.3d at 102.

## DID LOZANO SIGN AN ARBITRATION ACKNOWLEDGMENT IN 2013?

UTS first contends the trial court abused its discretion in denying its motion to compel arbitration because the evidence conclusively established Lozano executed the arbitration acknowledgment when he was rehired in 2013. UTS contends that although Lozano stated in his

deposition that he did not recall signing the arbitration acknowledgment in 2013, "the record establishes otherwise."

As previously noted, in reviewing a trial court's order denying a motion to compel arbitration, we defer to the trial court's factual determinations if they are supported by the record. *Labatt Food Serv., L.P.*, 279 S.W.3d at 643; *Amateur Athletic Union of the U.S., Inc.*, 499 S.W.3d at 102. In addition, we defer to any credibility determinations that may have affected the trial court's factual determinations, and we may not substitute our opinion for that of the trial court. *See Walker v. Packer*, 827 S.W.3d 833, 839–40 (1992); *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

In his deposition, Lozano was shown an arbitration acknowledgment with his signature that was dated May 3, 2013. Lozano testified he signed the arbitration acknowledgment in 2010, not in 2013. Lozano stated the May 3, 2013 date on the arbitration acknowledgment was not his writing. In addition, the arbitration acknowledgment signed by Lozano referred to the benefits schedule, summary plan description, and mutual agreement to arbitrate effective March 23, 2010. Although UTS presented conflicting evidence seeking to establish that Lozano signed the arbitration acknowledgment in 2013, we defer to the trial court's evaluation of the credibility of the witnesses and the weight to be given to the evidence. Because the record contains evidence supporting the trial court's implied finding that Lozano did not sign the arbitration acknowledgment in 2013, the trial court did not abuse its discretion in denying UTS's motion to compel based on the theory that Lozano executed the arbitration acknowledgment in 2013.

**IS LOZANO BOUND TO ARBITRATION BY THE 2010 ARBITRATION AGREEMENT?**

UTS next contends Lozano is required to arbitrate his claim pursuant to the 2010 Arbitration Agreement.[1] Lozano responds the 2010 Arbitration Agreement did not extend to his new period of employment by its own terms. Alternatively, Lozano responds his execution of new paperwork in 2013 terminated the 2010 Arbitration Agreement or the 2010 Arbitration Agreement was superseded.[2]

*A.      Did the 2010 Arbitration Agreement Extend to Lozano's 2013 Employment?*

In determining whether a valid agreement to arbitrate exists, ordinary principles of state contract law are applied. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015); *Amateur Athletic Union of the U.S., Inc.*, 499 S.W.3d at 102. Under these basic principles, we begin our interpretation of a contract with its text and give words their plain, ordinary, and generally accepted meaning. *U.S. Metals, Inc. v. Liberty Mut. Group, Inc.*, 490 S.W.3d 20, 23 (Tex. 2016).

Under the terms of the 2010 Arbitration Agreement, Lozano agreed to arbitrate all claims arising from any injury he suffered in the course and scope of his employment and any and all

---

[1] In its reply brief, UTS asserts that if the trial court determined Lozano's claim was subject to arbitration under the 2010 Arbitration Agreement, the issue of whether the 2010 Arbitration Agreement was subsequently revoked or terminated is an issue for the arbitrator to decide. UTS cites *In re Permian Tank & Mfg., Inc.*, 306 S.W.3d 338, 340–41 (Tex. App.—Eastland 2010, orig. proceeding), in support of its position. We reject this contention for the reasons stated in *Tex. La Fiesta Auto Sales, LLC v. Belk*, 349 S.W.3d 872, 880-82 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also Duarte v. Mayamax Rehab. Servs., L.L.P.*, No. 08-14-00074-CV, 2016 WL 6560050, at *5–6 (Tex. App.—El Paso Nov. 4, 2016, pet. filed). "[I]t is the trial court's duty to determine whether a later agreement between the parties revokes an arbitration clause, because the court must determine the threshold issue of whether a valid arbitration agreement exists." *Tex. La Fiesta Auto Sales, LLC*, 349 S.W.3d at 881.

[2] Lozano also contends UTS materially altered the agreement by adding a 2013 date adjacent to Lozano's signature. "A party asserting the material alteration defense must show (1) a material alteration of the underlying contract; (2) made without his consent; (3) which is to his detriment." *Lissiak v. SW Loan OO, L.P.*, 499 S.W.3d 481, 497 (Tex. App.—Tyler 2016, no pet.); *see also Futerfas Family Partners v. Griffin*, 374 S.W.3d 473, 479 (Tex. App.—Dallas 2012, no pet.) (same). Because the trial court found Lozano did not execute the agreement in 2013, Lozano cannot show the addition of the date was to his detriment.

claims relating to his employment with or termination from UTS. In the section of the agreement entitled "Term," the agreement provided as follows:

> This Agreement commences on the Acceptance Date and applies to all Covered Claims which occurred on or after the effective date.

> This Agreement shall survive the employer-employee relationship between the Company and the Claimant and shall apply to any Covered Claim whether it arises or is asserted during or after termination of the Claimant's employment with the Company or the expiration of any benefit plan.

Giving the words used in the "Term" section of the 2010 Arbitration Agreement their plain meaning, we hold the 2010 Arbitration Agreement is applicable to Lozano's claim because the agreement survived the employer-employee relationship and applies to any "Covered Claim" asserted after termination of Lozano's employment. *See Masse v. Waffle House*, No. CIV-13-1301-HE, 2014 WL 1901112 at *1-3 (W.D. Okla. May 13, 2014) (holding arbitration agreement signed in first period of employment applied to subsequent employment where agreement provided it applied to all claims past, present, or future, could only be revoked in writing, and stated it remained valid and enforceable unless modified by the defendant); *Anderson v. Waffle House, Inc.*, 920 F. Supp.2d 685, 693-95 (E.D. La. 2013) (holding arbitration agreement signed in first period of employment applied to subsequent employment where agreement provided it applied to all future claims and survived the employee's termination from employment). Lozano does not dispute that his claim is a "Covered Claim" within the scope of the 2010 Arbitration Agreement.

### B. Was the 2010 Arbitration Agreement Terminated by the 2013 Paperwork?

Lozano next contends the 2010 Arbitration Agreement was terminated by the paperwork he executed when he was rehired in 2013. In support of this contention, Lozano relies on *Frank v. 84 Components Co.*, No. NA02-14-CH/H, 2002 WL 1364168 (S.D. Ind. June 18, 2002).

In *Frank*, Kimberly Frank was initially hired by 84 Components Company (known as 84 Lumber) on July 16, 1999, and she signed an application that included an arbitration agreement

together with a form acknowledging she received and read the employee handbook and a Form W-4. 2002 WL 1364168, at *1. 84 Lumber terminated Frank's employment on May 2, 2000; however, the termination notice stated Frank was eligible for rehire. *Id.* When Frank was rehired on August 27, 2000, she did not sign a second application but again signed the employee handbook acknowledgment form, the W-4, and other routine forms. *Id.* After 84 Lumber fired Frank on December 6, 2000, she sued, asserting a discrimination claim. *Id.*

The contested issue presented on appeal was "whether the arbitration agreement form from 1999 [could] be applied to claims arising under the second firing when there was no separate arbitration agreement for Frank's second period of employment." *Id.* at *2. The court noted the "question is one of contract interpretation." *Id.* Although the 1999 arbitration agreement stated it applied to all claims "made or which arise during and following my voluntary or involuntary termination of employment," the court held the 1999 arbitration agreement did not apply. *Id.* at *1, 3.

The contract language in *Frank* is readily distinguishable from the instant case. In this case, the 2010 Arbitration Agreement contained a "term" provision which stated the agreement survived the employer-employee relationship between UTS and Lozano and applied to "any Covered Claim whether it arises or is asserted during or after termination of the Claimant's employment with the Company or the expiration of any benefit plan." Because the 2010 Arbitration Agreement survived the employer-employee relationship and Lozano did not sign any other document in conflict with or that terminated the 2010 Arbitration Agreement, we hold the 2010 Arbitration Agreement was not terminated when Lozano executed the new paperwork in 2013.[3]

---

[3] Lozano also argues UTS's actions in requesting him to sign another arbitration acknowledgment in 2015 was proof the 2010 Arbitration Agreement was not intended to apply after he was rehired. In the case cited by Lozano to support

*C.        Was the 2010 Arbitration Agreement Superseded?*

Finally, Lozano contends the 2010 Arbitration Agreement was superseded.  In support of this contention, Lozano relies on language in the 2013 Arbitration Agreement which states, "This Program Agreement constitutes the parties' complete agreement and supersedes any prior agreement regarding arbitration of Covered Claims which occur during the Term of this Agreement."  We previously held, however, the evidence supported the trial court's finding that Lozano did not execute the 2013 Arbitration Agreement.  Therefore, the 2013 Arbitration Agreement, which Lozano did not execute, could not supersede the 2010 Arbitration Agreement.

## CONCLUSION

Because Lozano remained bound to arbitrate his claim under the 2010 Arbitration Agreement, the trial court erred in denying UTS's motion to compel.  The trial court's order is reversed, and the cause is remanded to the trial court with instructions to sign an order compelling arbitration and staying the pending litigation.

Marialyn Barnard, Justice

---

this argument, the court held parol evidence was admissible to remove any uncertainty in a purchase order. *See Beall v. Hardwicke-Etter Co.*, 460 S.W.3d 516, 519 (Tex. Civ. App.—Waco 1970, writ dism'd w.o.j.).  In this case, we disagree the 2010 Arbitration Agreement contains any uncertainty; therefore, the parties' subsequent conduct cannot be used to alter the plain meaning of the agreement.  We note the evidence established all UTS employees were requested to execute the 2015 arbitration acknowledgment because a UTS management employee believed having all employees execute the acknowledgment required less work than determining which employees had not already executed an acknowledgment.