

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00766-CV

**PAWN TX, INC.** d/b/a Cash America and FirstCash Holdings, Inc.,
Appellants

v.

Henry **JIMENEZ**, Jr.,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CI03620
Honorable Tina Torres, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Lori I. Valenzuela, Justice
                Lori Massey Brissette, Justice
                Velia J. Meza, Justice

Delivered and Filed: July 30, 2025

AFFIRMED

In this accelerated appeal, appellants Pawn Tx, Inc. d/b/a Cash America and FirstCash Holdings, Inc. challenge the trial court's denial of their motion to compel arbitration. We conclude that a valid agreement to arbitrate exists between appellants and appellee Henry Jimenez, Jr. However, we hold that the claims asserted by Jimenez are not within the scope of the parties' arbitration clause. Therefore, we affirm.

**BACKGROUND**

This dispute arises from a personal injury. On May 28, 2022, Jimenez, who was a frequent customer of appellants, was looking to purchase a fishing pole at appellants' store in San Antonio, when he alleges that a weed-eater fell and struck him on his upper body. Jimenez left appellants' store shortly after the accident.

Five days later, on June 2, 2022, Jimenez returned to appellants' store and purchased a ring through a layaway agreement. The layaway agreement contained the transaction details, including, among other things, the parties' identifying information, the price and description of the ring, and several enumerated terms related to Jimenez's scheduled payments. The layaway agreement does not reference Jimenez's previous visits to appellants' store. At the end of the layaway agreement signed by Jimenez, the following arbitration clause appears:

> Each party to this agreement agrees to binding arbitration ("agreement"), under the Federal Arbitration Act, and hereby expressly waives any right to trial by jury of any claim, demand, action, or cause of action, whatsoever, or claims for injunctive relief arising under this agreement or in any way connected with, related or incidental to the dealings between the parties with respect to this agreement, or the transactions contemplated by this agreement in each case, or in any way arising out of or between the relationship between the parties whether now existing or hereafter arising, and whether sounding in contract, tort, equity, or otherwise (hereinafter collectively, "disputes"). . . . All disputes, including issues of arbitrability, will be conducted in the county of the customer's billing address, in accordance with the Federal Rules of Civil Procedure[.]

On April 13, 2023, Jimenez filed the lawsuit underlying this appeal, alleging appellants were negligent on May 28, 2022, when the weed-eater fell on him and that he suffered injuries as a result of the incident. Appellants filed a verified denial and moved to compel arbitration pursuant to the Federal Arbitration Act ("FAA"). In their motion to compel arbitration, appellants, relying on the arbitration clause in the June 2, 2022 ring layaway agreement, argued a valid agreement to arbitrate existed between the parties and that Jimenez's claims were within the scope of the

agreement because his claims "arise out of the relationship between the parties and sound in tort." In response, Jimenez contended, among other things, that his personal injury claims fell outside the scope of the arbitration clause because his alleged injuries occurred before he entered into the agreement and were not connected in any way to the ring transaction.

After a hearing, the trial court denied appellants' motion to compel. Appellants filed their notice of appeal and moved to stay the trial court proceedings pending appeal, which we granted.

**ARBITRATION**

*Standard of Review and Applicable Law*

"In general, a party seeking to compel arbitration under the FAA must establish that: (1) there is a valid arbitration agreement, and (2) the claims raised fall within that agreement's scope." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). If the party seeking arbitration establishes a valid agreement to arbitrate and the claims fall within the scope of the agreement, "the burden then shifts, and to avoid arbitration, the party opposing it must prove an affirmative defense to the [agreement's] enforcement[.]" *Henry v. Cash Biz, L.P.*, 551 S.W.3d 111, 115 (Tex. 2018). Whether the claims in dispute fall within the scope of a valid arbitration agreement is a question of law we review de novo; however, we review a trial court's factual determinations for an abuse of discretion. *See id.*; *Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021).

I.    *Existence of a Valid Arbitration Agreement*

As the parties seeking to compel arbitration, appellants' first hurdle was to establish the existence of a valid agreement to arbitrate between appellants and Jimenez. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737. The existence of a valid agreement to arbitrate is a legal question we review by applying the ordinary principles of contract construction. *See Tex. First Rentals,*

*LLC v. Montage Dev. Co., LLC*, No. 04-22-00429-CV, 2023 WL 5270534, at \*4 (Tex. App.—San Antonio Aug. 16, 2023, no pet.) (mem. op.). "The initial evidentiary burden for proving the existence of an arbitration agreement is held by the movant." *Id*. "This evidentiary burden encompasses threshold evidentiary issues such as authenticity and evidence of mutual assent." *Id.* (internal quotation marks omitted).

Here, appellants attached the layaway agreement purporting to contain Jimenez's signature to their motion to compel. Jimenez included screenshots of the same arbitration agreement in his response to appellants' motion in the trial court and does not dispute, either in the trial court or on appeal, that the signature on the June 2, 2022, layaway agreement was his. Accordingly, we hold that a valid arbitration agreement exists between the parties.

Because a valid arbitration agreement exists between the parties, the next inquiry is whether Jimenez's claims fall within the scope of that agreement.

## II. Scope of the Parties' Agreement

### a. Who Determines the Scope of the Parties' Agreement?

Before addressing the merits of this question, we must first determine whether, based on the parties' agreement, the trial court or the arbitrator has the authority to determine the scope of issues subject to arbitration. *See TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 701 (Tex. 2023) ("A dispute over whether parties agreed to resolve their controversies through arbitration—referred to as a dispute over the controversies' 'arbitrability'—typically encompasses three distinct disagreements: (1) the merits of the underlying controversy . . . ; (2) whether the merits must be resolved through arbitration instead of in the courts; and (3) who (a court or the arbitrator) decides the second question."); *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018) ("[P]arties have a right to contract as they see fit, they may agree to arbitral

delegation clauses that send gateway issues such as arbitrability to the arbitrator."); *see also Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 165 (Tex. App.—El Paso 2015, no pet.) ("While parties may agree to delegate issues concerning the scope of an arbitration agreement to the arbitrator, the scope of an arbitration agreement is a separate issue from its validity and enforceability.").

Generally, the law favors trial court determination of gateway issues, which include whether the claims at issue fall within the scope of the parties' arbitration agreement. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). However, the parties may agree for the arbitrator to determine arbitrability if the agreement includes a clear and unmistakable delegation of authority away from the trial court to an arbitrator. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."); *TotalEnergies E&P USA, Inc.*, 667 S.W.3d at 712 (holding "that, as a general rule, an agreement to arbitrate disputes in accordance with rules providing that the arbitrator 'shall have the power' to determine 'the arbitrability of any claim' incorporates those rules into the agreement and clearly and unmistakably demonstrates the parties' intent to delegate arbitrability issues to the arbitrator"); *Cobra Acquisitions LLC v. AL Glob. Servs.*, LLC, No. 04-19-00410-CV, 2020 WL 1931599, at *2 (Tex. App.—San Antonio Apr. 22, 2020, no pet.) (mem. op.) ("[U]nless the parties have clearly and unmistakably agreed otherwise, courts decide the 'gateway' matters of whether the parties have a valid arbitration agreement and whether an arbitration clause in a binding contract applies to a particular kind of controversy.").

Here, appellants argue that because the arbitration clause in the layaway agreement requires arbitration to be conducted in accordance with the FAA and states that "All disputes, including issues of arbitrability, will be conducted in the county of the customer's billing address, in accordance with the Federal Rules of Civil Procedure," the parties clearly and unmistakably agreed to refer issues of arbitrability to the arbitrator. We disagree.

Just like the parties in this case, the parties in *TotalEnergies E&P USA, Inc.* disagreed about whether the court or the arbitrator had the authority to determine the arbitrability of the claims at issue. *See* 667 S.W.3d at 699–701. Although the parties' agreement did not contain language that explicitly delegated this authority to the arbitrator word for word, the Court held "that the parties clearly and unmistakably delegated to the AAA [American Arbitration Association] arbitrator the decision of whether the parties' controversy must be resolved by arbitration" because the parties agreed to arbitrate in accordance with the AAA rules—which provided "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id.* at 700, 721 (citing the version of the AAA rules in effect at the time of the parties' agreement).

In contrast, the parties' agreement in this case does not contain any reference to the AAA or similar rules clearly and unmistakably delegating the scope of arbitrability to the arbitrator. *See id.* at 721. While the arbitration clause here references that arbitrability of the parties' dispute will be conducted in accordance with the FAA and the Federal Rules of Civil Procedure, appellants do not cite to any statute or rule in the FAA or the Federal Rules of Civil Procedure containing clear and unmistakable language delegating scope authority to the arbitrator. *See* 9 U.S.C. §§ 1–16; *cf. TotalEnergies E&P USA, Inc.*, 667 S.W.3d at 710–11 ("The AAA rule mandates that the arbitrator

have 'the power' to decide arbitrability issues[.] . . . We conclude that, by providing that the arbitrator 'shall have the power' to determine the arbitrability of any claim, the rule clearly and unmistakably delegates that decision exclusively to the arbitrator.") (citation and emphasis omitted). Accordingly, we do not interpret the parties' agreement to clearly and unmistakably delegate the scope of the parties' arbitration agreement to the arbitrator. Rather, if the parties intended to clearly and unmistakably refer issues of arbitrability to the arbitrator, such delegation would be apparent from the language of their agreement. *See, e.g.*, *id.* at 698–701; *RSL Funding*, 569 S.W.3d at 119; *Earth Motorcars, LLC v. Glowka*, No. 04-23-00166-CV, 2024 WL 2735033, at *2–3 (Tex. App.—San Antonio May 29, 2024, no pet.) (mem. op.); *see also Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 532–33 (Tex. 2019) ("The Supreme Court . . . prohibits interpreting silence as assent, explaining that 'to interpret silence or ambiguity on the who should decide arbitrability point as giving the arbitrators the power . . . might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.'") (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (internal quotation marks omitted)).

Therefore, because the parties did not clearly and unmistakably agree otherwise, the trial court retained the authority to determine whether Jimenez's negligence claims fell within the scope of the arbitration clause.

### b. Do Jimenez's Claims Fall Within the Scope of the Agreement?

Now that we have determined the trial court retained the authority to decide scope and arbitrability, we must next determine whether the appellants satisfied their burden to show that Jimenez's claims fall within the scope of the arbitration clause in the June 2, 2022 ring layaway agreement. We begin our review with the starting point that once the party seeking to compel

arbitration establishes the existence of a valid agreement to arbitrate, like appellants have done here, "a strong presumption favoring arbitration arises and we resolve doubts as to the agreement's scope in favor of arbitration." *Parrish & Co., Inc. v. Polidore*, 647 S.W.3d 469, 473 (Tex. App.—San Antonio 2022, no pet.) (citation and internal quotation marks omitted); *Henry*, 551 S.W.3d at 115 ("The presumption in favor of arbitration is so compelling that a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.") (citations, internal quotation marks, and emphasis omitted).

When determining the scope of an arbitration agreement, we focus on the factual allegations rather than the causes of action asserted. *Polidore*, 647 S.W.3d at 473; *MPII, Inc. v. Hidalgo*, No. 13-23-00297-CV, 2024 WL 1204119, at *3 (Tex. App.—Corpus Christi–Edinburg Mar. 21, 2024, no pet.) (mem. op) ("Whether or not a tort claim falls within the scope of an arbitration agreement . . . is determined by a review of the facts alleged in support of the claim."). "Thus, the question we must first address is whether the facts alleged by [Jimenez] 'have a 'significant relationship' to or are 'factually intertwined' with the contract that is subject to the arbitration agreement." *MPII, Inc.*, 2024 WL 1204119, at *3 (quoting *Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 105 (Tex. App.—San Antonio 2016, no pet.)); *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 516 (Tex. 2006) (orig. proceeding) (per curiam). "If the facts alleged stand alone and are completely independent of the contract, the claim is not subject to arbitration." *Bray*, 499 S.W.3d at 105. As our sister court has stated:

> [T]he nature of the parties' relationship is critical. If their sole relationship is established and governed by an agreement with an arbitration provision, their disputes are more likely to fall within the scope of the arbitration provision. But when the relationship extends beyond the agreement or is governed by separate and independent agreements, arbitration is less likely. However, courts are also in agreement that even broad arbitration provisions have their limits.

*In re Great W. Drilling, Ltd.*, 211 S.W.3d 828, 838 (Tex. App.—Eastland 2006, orig. proceeding) (citations omitted), *mand. granted sub nom on other grounds In re Gulf Expl., LLC*, 289 S.W.3d 836 (Tex. 2009) (orig. proceeding).

Relevant to our analysis, we appreciate the three general scope classifications of arbitration clauses: narrow, broad, and infinite. "A narrow clause only requires arbitration of disputes arising out of the contract, while broad clauses require arbitration of all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Emily's Place, Inc. v. Regions Bank*, 764 F. Supp. 3d 485, 492 (N.D. Tex. 2025) (citation, alteration, and internal quotation marks omitted). "An arbitration clause is 'broad' when it contains 'relating to' language." *Id.* (citations, alterations, and internal quotation marks omitted). While a broad clause scope is usually limited to claims related to the parties' contract, an infinite clause further expands the scope of the clause by referring to indefinite language, such as claims related to the parties' "relationship." *See generally* David Horton, *Infinite Arbitration Clauses*, 168 U. PA. L. REV. 633 (2020). Because the agreement in this case contains "relationship" language, our analysis must be viewed through the lens that the arbitration clause at issue is neither narrow nor broad, but rather infinite in scope. *See id.*; *see also United Healthcare of Tex., Inc. v. Low-T Physicians Serv., P.L.L.C.*, No. 02-20-00033-CV, 2021 WL 210846, at *6 (Tex. App.—Fort Worth Jan. 21, 2021, no pet.) (mem. op.) (recognizing that arbitration agreements, like contracts, "are construed from a utilitarian standpoint, bearing in mind the particular business activity sought to be served").

Turning to the specific facts before us, the layaway agreement containing the arbitration clause is factually concerned with the June 2, 2022 ring transaction. In contrast, Jimenez's negligence claims are wholly factually premised on his alleged injuries occurring on May 28, 2022.

That is, Jimenez's factual claims do not have a "significant relationship" to nor are they "factually intertwined" with the contract that is subject to the arbitration agreement—the June 2, 2022 ring transaction. *See Bray*, 499 S.W.3d at 105.

Our sister court reviewed a substantially similar arbitration clause in *Cash America Pawn LP v. Meza*. *See generally* 653 S.W.3d 340 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (mem. op.).[1] In *Meza*, appellee Meza pawned two items at a Cash America location in Pasadena, Texas and signed an agreement containing the same arbitration clause at issue in this appeal. *Id.* at 341. Meza later returned and retrieved her items. *Id.* Two years later, Meza sued Cash America after she allegedly fell at a different location and was injured on its premises. *Id.* at 342. Like our case, Cash America asserted the personal injury suit was subject to the arbitration clause Meza had signed two years earlier in connection with her pawn transaction. *Id.* Our sister court disagreed, explaining:

> Cash America still contends that the premises liability claim falls within the scope of the agreement, emphasizing in particular the final clause which states that the parties agreed to arbitrate any dispute "in any way arising out of or between the relationship between the parties whether now existing or hereafter arising, and whether sounding in contract, tort, equity, or otherwise." Cash America believes that, through this language, the parties agreed to arbitrate any future dispute, so long as the dispute arose between the parties' "relationship," even if that relationship exists as between an invitee and a premises owner. But to accept this argument, we would have to conclude that the parties intended to arbitrate every possible dispute between them into perpetuity—no matter the dispute's connection to the underlying pawn transaction. There is nothing to support a holding that the parties intended for such a limitless scope.

> We believe that a dispute arises between the parties' relationship if the dispute is related to the underlying agreement—i.e., the earlier pawn transaction. Meza's premises liability claim has no relationship to that pawn transaction.

*Id.* at 343.

---

[1] We acknowledge that, unlike the case before this court, the arbitration clause in *Meza*, which was decided prior to *TotalEnergies E&P USA, Inc.*, contains clear and unmistakable language delegating the scope issue to the arbitrator.

We agree with the premise of our sister court's analysis quoted above. While a personal injury that has a "significant relationship with" or one that is "factually intertwined" to the agreement containing an arbitration clause may be subject to arbitration—a question we take no position on—the facts asserted by Jimenez, even when viewed through the broadest lens in favor of arbitration, do not show that the parties intended to resolve Jimenez's previous unconnected injury claims through arbitration. *See id.*; *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303 (2010) ("We have applied the presumption favoring arbitration, in FAA . . . cases, only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute."); *Osornia v. AmeriMex Motor & Controls, Inc.*, 367 S.W.3d 707, 712 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("[T]he strong policy in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or to allow modification of the unambiguous meaning of the arbitration clause."); *see, e.g.*, *Abbas v. Truist Bank*, No. 3:24-CV-01283, 2025 WL 875362, at *5, *10 (M.D. Tenn. Mar. 20, 2025) (holding account agreement containing an arbitration clause covering "any claim, cause of action, dispute, or controversy . . . , whether preexisting, present, or future, which arises out of or relates to . . . any aspect of our relationship" did not extend to claims filed years later related to bank's handling of plaintiffs' safety deposit box); *see also McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 278 (S.D.N.Y. 2021) ("[T]o the extent that the [arbitration clause] purports to require arbitration of claims wholly unrelated to the contract in which it is contained, it is arguably not even subject to the FAA and its policy favoring arbitration."). Therefore, Jimenez's claims against appellants are not within the scope of the arbitration clause in the June

2, 2022 layaway agreement. Accordingly, we hold that the trial court did not err in denying appellants' motion to compel arbitration.

**CONCLUSION**

We overrule appellants' issues and affirm the judgment of the trial court.


Lori I. Valenzuela, Justice