

# NUMBER 13-23-00297-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MPII, INC. D/B/A MISSION PARK
FUNERAL CHAPELS AND
CEMETERIES,                                                                          Appellant,

v.

MARY LOU HIDALGO, ROSEMARY
JIMENEZ, GENARO SALINAS JR.,
GERARDO SALINAS, AND
GEORGE SALINAS,                                                                      Appellees.

## On appeal from the 224th District Court
of Bexar County, Texas.

## MEMORANDUM OPINION

### Before Justices Longoria, Silva, and Peña
### Memorandum Opinion by Justice Silva

Appellant MPII, Inc. d/b/a Mission Park Funeral Chapels and Cemeteries, appeals

an order denying its motion to compel arbitration and stay litigation pending arbitration.[1] By what we construe as a single issue, appellant argues the trial court abused its discretion in denying its motion to compel because there exists an enforceable arbitration agreement, and appellees Mary Lou Hidalgo, Rosemary Jimenez, Genaro Salinas Jr., Gerardo Salinas, and George Salinas, children of the decedent Mary Lou Salinas,[2] are bound to the arbitration agreement under the doctrines of direct-benefits estoppel and agency. We affirm.

## I.    BACKGROUND

The decedent passed away on November 21, 2020. Appellees, along with their sister, Maria Garzes, contacted appellant to effectuate their mother's existing "Prepaid Funeral Service Purchase Agreement" (Preneed Agreement).[3] The following day, Maria signed a contract with appellant for embalmment and visitation services (2020 Agreement). On December 7, 2020, when the family arrived for the scheduled viewing, they discovered that the body in the coffin was not their mother and that their mother had been accidentally buried five days prior. The decedent's body was later disinterred, and after engaging the services of another funeral home, they buried their mother.

Appellees and Maria sued appellant asserting claims of negligence and gross negligence, alleging that appellant:

---

[1] This appeal was transferred from the Fourth Court of Appeals in San Antonio pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] Mary Lou Salinas had six children—only five of which are parties to this appeal.

[3] Prior to her passing, the decedent and her husband Genaro Salinas executed a "Prepaid Funeral Service Purchase Agreement" in 1973 with appellant, authorizing appellant to "take possession of the remains of the decedent for the purposes of preparing the same and conducting and handling said funeral service including interment." The Preneed Agreement did not contain an arbitration provision.

2

1. Without authority or consent, remov[ed] [the decedent's] remains from Mission Park South on or before November 24, 2020;

2. Without authority or consent, bur[ied] [the decedent's] remains in a stranger's grave without her family present or their knowledge at Chapel Hill Cemetery on November 24, 2020;

3. Without authority or family consent, disinterr[ed] [the decedent's] decayed remains from the Chapel Hill Cemetery and t[ook] them back to Mission Park South on December 8, 2020.

Each of the above acts, by [appellant] and its employees, agents, and representatives constitutes negligence and were, individually or in combination, the proximate cause of the incident made the basis of this suit and of the injuries and damages suffered by [appellees]. These injuries and damages include mental anguish as a result of the deprived right of sepulture, which is defined under Texas common [l]aw, as the right of next of kin to control the disposition of a loved ones' remains. [Appellant] committed professional negligence in taking above unauthorized actions of burial/disposition and disinterment of [the decedent]. [Appellant] had an independent legal duty to not mishandle the loved one's remains and thus interfere with putting her to rest, and breach of this duty made it liable for mental anguish damages. [Appellees'] claims [sic] under the tort laws of the State of Texas, specifically, [appellees'] loss of right of sepulture.

Appellant filed a motion to compel arbitration and to stay the suit pending arbitration. Appellant urged that Maria had signed a funeral services agreement containing an arbitration agreement and appellees, though non-signatories, were bound by this agreement. Appellant further asserted that the arbitration clause applied because appellees' negligence and gross negligence claims are based on appellant's alleged handling of their mother's remains, which occurred "because of and in connection with the [f]uneral [s]ervices [a]greement." Appellant supported its motion to compel arbitration with a copy of the 2020 Agreement, which contained "Terms and Provisions" language as follows:

1. ANY CLAIM, DISPUTE, OR CONTROVERSY BASED ON, ARISING

3

OUT OF, OR RELATING TO THIS AGREEMENT OR ITS ENFORCEMENT OR INTERPRETATION (EACH, A "DISPUTE") SHALL BE SUBMITTED TO BINDING ARBITRATION IN SAN ANTONIO, TEXAS BEFORE A SINGLE ARBITRATOR PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION THEN IN EFFECT. SELLER AND PURCHASER IRREVOCABLY CONSENT TO SUCH ARBITRATION OF DISPUTES. . . .

. . . .

7.   This Agreement is binding on and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, family members, administrators, executors, successors and permitted assigns.

Additionally, appellant attached exhibits indicating that although, due to COVID-19 restrictions, appellant had only met in person with Maria and Genero Jr. to execute the funeral services agreement—Mary Lou, Rosemary, Gerardo, and George participated in the meeting via cell phone. As further evidence of appellees' individual involvement in the creation of the 2020 Agreement and the existence of apparent authority extended to Maria by appellees, appellant attached deposition statements and interrogatories, wherein appellees acquiesce to having been a part of the discussion of the services provided for by the 2020 Agreement.

Appellees filed a response, asserting in relevant part that they have not brought a claim regarding any services or merchandise that are the subject of the 2020 Agreement. Rather, appellees' claim is "for negligence and gross negligence stemming from [appellant's] mishandling of [the decedent's] remains, subjecting [the decedent] to be buried in a stranger's grave, and then disinterring her remains without legal or related judicial authority and without the family's consent." Appellees additionally contend that even if Maria individually agreed to arbitrate her claims, appellees cannot be compelled

4

to arbitrate as none were signatories to the 2020 Agreement nor do the doctrines of direct-benefits estoppel or agency apply. As to direct-benefits estoppel, appellees argue that they received no benefit from the 2020 Agreement as the contracted funeral services never transpired. With respect to appellant's agency contention, appellees argue there is "no evidence to show Maria's siblings had the requisite control to establish [the] principal-agent relationship."

Appellees additionally attached written declarations from each appellee, asserting that they: did not authorize or intend to authorize Maria to act as their "agent in connection with procuring additional funeral services and merchandise" for their mother's funeral; "did not receive any actual benefit from the 2020 Agreement"; "did not sign the 2020 Agreement[;] and did not have an opportunity to review the 2020 Agreement until after the lawsuit was filed." A declaration signed by Maria was also filed, wherein she swore she signed the 2020 Agreement "in [her] sole individual capacity and not as an agent of [her] siblings," she was not "authorized to sign any documents on behalf of [her] siblings," "nor did [she] intend to act as [an] agent for any of [her] siblings."

Following a hearing on appellant's motion to compel arbitration, the trial court granted appellant's motion only as to Maria, ordered Maria's causes of action to be severed, and ordered appellant's motion otherwise denied as to appellees. This accelerated appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.016, 171.098(a)(1).

5

## II.    DISCUSSION

Appellant asserts that appellees' claims fall within the scope of the 2020 Agreement arbitration provision, and appellees are therefore bound to arbitration under the doctrines of direct-benefits estoppel or agency.

### A.    Standard of Review and Applicable Law

"[A] party seeking to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of the agreement." *Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*, 672 S.W.3d 367, 376 (Tex. 2023) (quoting *Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 585–86 (Tex. 2022) (per curiam)). "[O]nce it is established that a valid arbitration agreement exists and that the claims in question are within the scope of the agreement, a presumption arises in favor of arbitrating those claims and the party opposing arbitration has the burden to prove a defense to arbitration." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499–500 (Tex. 2015). Because the presumption in favor of arbitration is so compelling, "a court should not deny arbitration *unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (cleaned up).

While we review a trial court's order denying a motion to compel arbitration for abuse of discretion, *Henry*, 551 S.W.3d at 115, questions of whether a valid arbitration agreement exists and whether an arbitration agreement is binding on a nonparty are reviewed de novo. *Whiteley*, 672 S.W.3d at 376. A trial court abuses its discretion if it

6

"acted without reference to guiding rules or principles or in an arbitrary or unreasonable manner." *In re Copart, Inc.*, 619 S.W.3d 710, 713 (Tex. 2021) (orig. proceeding) (per curiam) (cleaned up).

"Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms." *Jody James Farms, JV v. Altman Grp.*, 547 S.W.3d 624, 633 (Tex. 2018). "But sometimes a person who is not a party to the agreement can compel arbitration with one who is, and vice versa." *Whiteley*, 672 S.W.3d at 376 (quoting *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006)). "Courts have recognized six theories, arising out of common principles of contract and agency law, that may bind non[-]signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary." *Id.* (cleaned up). Specifically, appellant contends appellees are bound by the doctrines of direct-benefits estoppel and agency.

## B. Analysis

Although the arbitration provision here is more limiting than the provision analyzed by the supreme court in *Henry*, its language is nonetheless broad, encompassing "ANY CLAIM, DISPUTE, OR CONTROVERSY BASED ON, ARISING OUT OF, OR RELATING TO THIS AGREEMENT OR ITS ENFORCEMENT OR INTERPRETATION." *Cf. Henry*, 551 S.W.3d at 116 ("Here, the arbitration agreement applies to 'all disputes' and specifies that '"dispute" and "disputes" are given the broadest possible meaning and include, without limitation . . . all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision.'"). Such language has been

previously held by this Court and our sister courts to embrace some tort claims. *See Amateur Athletic Union of the United States, Inc. v. Bray*, 499 S.W.3d 96, 105 (Tex. App.—San Antonio 2016, no pet.); *see also SCI Tex. Funeral Servs., LLC v. Gonzalez*, No. 13-21-00453-CV, 2023 WL 3637979, at \*5 (Tex. App.—Corpus Christi–Edinburg May 25, 2023, no pet.) (mem. op.); *Storm Water Sols., LLC v. Live Oak Rail Partners, LLC*, No. 13-17-00492-CV, 2019 WL 613300, at \*5 (Tex. App.—Corpus Christi–Edinburg Feb. 14, 2019, no pet.) (mem. op.). Whether or not a tort claim falls within the scope of an arbitration agreement, however, is determined by a review of the facts alleged in support of the claim. *See Bray*, 499 S.W.3d at 105; *see also Gonzalez*, 2023 WL 3637979, at \*5. Thus, the question we must first address is whether the facts alleged by appellees "have a 'significant relationship' to or are 'factually intertwined' with the contract that is subject to the arbitration agreement." *See Bray*, 499 S.W.3d at 105; *see also Gonzalez*, 2023 WL 3637979, at \*5. "If the facts alleged stand alone and are completely independent of the contract, the claim is not subject to arbitration." *Bray*, 499 S.W.3d at 105.

Appellees frame their pleaded common law negligence claim as a violation of their "right of sepulture"—which appellees define as "the right of next of kin to control the disposition of a loved ones' remains." We remain uncertain of whether an invocation of "right of sepulture" is the appropriate claim, and note that the advancement of "right of sepulture" claims have historically been in a different legal context,[4] including: a grave

---

[4] Additionally, pursuant to the Texas Health and Safety Code, a cemetery organization, such as appellant, is permitted to "sell and convey the exclusive right of sepulture in a plot" for interment (i.e., burial). TEX. HEALTH & SAFETY CODE ANN. §§ 711.038(a), 711.001 (21) (defining "interment" as "the permanent disposition of remains by entombment, burial, or placement in a niche"). Though the "right of sepulture" is not defined in the code, a "plot owner" is defined as "a person"

plot encroachment claim, where the headstone of the decedent was allegedly encroaching upon another burial plot, *Talley v. Rocky Creek Cemetery Ass'n*, No. 11-22-00104-CV, 2023 WL 8631479, at *1 (Tex. App.—Eastland Dec. 14, 2023, no pet. h.) (mem. op.); a breach of a contract claim, "whereby defendant had undertaken to afford plaintiff 'Right of Sepulture' in a specified lot of its cemetery," *Rice v. Sioux City Mem'l Park Cemetery*, 349 U.S. 70, 71 (1955); and a probate claim where a will provision included a dedication of a private graveyard for next of kin in perpetuity, *Bockel v. Fid. Dev. Co.*, 101 S.W.2d 628, 630 (Tex. App.—Galveston 1937, no writ). *See* Katherine Calderon, *The World of the Dead, the Right of Sepulcher, and the Power of Information Court of Appeals of New York*, 32 Touro L. Rev. 785, 804 (2016) (noting that the "right of sepulture" is often intertwined with the "right of interment," which concerns burial); *see also Sepulture*, MERRIAM-WEBSTER'S DICTIONARY (11th ed. 2020) (a "sepulture" is a burial). Because we focus on appellees' factual allegations—which appertain to appellant's mishandling of the decedent's remains by interring her into and then disinterring her from the wrong burial plot—to the extent it is necessary, we utilize the mishandling of appellees' loved one's remains as the "duty" which underscores appellees' negligence claim. *See In re Weekley Homes, L.P.*, 180 S.W.3d at 131–32 (providing that

---

    (A)  in whose name a plot is listed in a cemetery organization's office as the owner of the exclusive right of sepulture; or

    (B)  who holds, from a cemetery organization, a certificate of ownership or other instrument of conveyance of the exclusive right of sepulture in a particular plot in the organization's cemetery.

*Id.* § 711.001(32)(A), (B); *see Oakland Cemetery Co. v. People's Cemetery Ass'n*, 57 S.W. 27, 28 (Tex. 1900) (observing that the object of a cemetery business "was to make a profit by the sale of lots for sepulture in said cemetery").

it is the substance of the pleadings rather than the stated claim which informs our "within the scope" analysis); *see also Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 383 (Tex. 2012) (noting that the bodies of deceased persons have held a unique status in the law as "a sort of quasi property, in which certain persons have rights therein and have duties to perform" (citing *Regina v. Price*, 12 Q.B.D. 247, 252–54 (1884) (Eng.))); *see generally Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022) (setting forth the elements for common-law negligence: "(1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach").

Appellant counters that even absent appellees' invocation of the 2020 Agreement in its pleading, the contracted-for services did include the handling of the decedent's remains. Specifically, the 2020 Agreement contained a provision entitled "SERVICES AND MERCHANDISE," which afforded appellant the responsibility of embalming, dressing, and casketing the decedent in preparation for funeral services. The 2020 Agreement also provided for appellant's transportation of the decedent from the funeral home to the burial plot. The 2020 Agreement, however, does not encompass the interment or disinterment of the decedent[5]—which serve as the crux of appellees' claim. *See generally In re Champion Indus. Sales, LLC*, 398 S.W.3d 812, 823 (Tex. App.—

---

[5] To appellant's contention that the Preneed Agreement does contract for appellant's interment services, thereby binding appellees, while it is "well-established law that instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other," *see Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000), it is undisputed that appellees here were neither signatory parties to the Preneed Agreement executed in 1973 nor to the 2020 Agreement; the Preneed Agreement contained no arbitration provision; and the 2020 Agreement contained both an arbitration provision and an "ENTIRE AGREEMENT" provision providing that it "contains all the terms which have been agreed upon." Thus, this is not the instance wherein we may construe the contracts as a single, unified instrument. *See id.*; *Wells v. Wells*, 621 S.W.3d 362, 367 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

10

Corpus Christi–Edinburg 2012, orig. proceeding.) ("[It] is well established that plaintiffs are the masters of their suit regarding the claims . . . they choose to pursue." (quoting *Heard v. Moore*, 101 S.W.3d 726, 728 (Tex. App.—Texarkana 2003, pet. denied))). That the 2020 Agreement and appellees' factual allegations both touch on appellant's handling of the decedent's remains is not controlling in and of itself when the contracted handling of the decedent in the 2020 Agreement included neither interment nor disinterment services. To the extent there exists any association between the substance of appellees' claim and the 2020 Agreement, that appellees' claim arises from common law and may exist wholly independent from the contract informs our analysis and disposition. *See Bray*, 499 S.W.3d at 105.

"[I]f the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration." *Pennzoil Co. v. Arnold Oil Co., Inc.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, no pet.). As discussed *supra*, appellees allege facts concerning appellant's mishandling of their mother's corpse during interment (and disinterment). Moreover, there exists an independent duty under Texas law not to negligently mishandle a corpse during interment. *SCI Tex. Funeral Servs., Inc. v. Nelson*, 540 S.W.3d 539, 547–48 (Tex. 2018) (observing that "[t]he relationship between a person disposing of a decedent's remains and the next of kin is special, even without a contract."); *Rader Funeral Home, Inc. v. Chavira*, 553 S.W.3d 10, 17 (Tex. App.—El Paso 2018, no pet.) ("[A] contractual relationship is not required if the defendant breaches an independent legal duty; that is, the duty to not negligently mishandle a corpse."); *see also*

11

*SCI Tex. Funeral Servs., L.L.C. v. Montoya*, No. 13-19-00088-CV, 2020 WL 5582367, at *7 (Tex. App.—Corpus Christi–Edinburg Sept. 17, 2020, no pet.) (mem. op.) (observing the legal duty to not negligently mishandle a corpse); *SIG-TX Assets, LLC v. Serrato*, No. 05-18-00462-CV, 2019 WL 1771301, at *4 (Tex. App.—Dallas Apr. 23, 2019, no pet.) (mem. op.) (same). Because the facts alleged in support of appellees' claim stand alone and could be maintained without reference to the contract, appellees' claim is not subject to arbitration. *See Pennzoil Co.*, 30 S.W.3d at 498; *see also San Antonio Eye Ctr., P.A. v. Vision Assocs. of S. Tex. P.A.*, No. 04-22-00078-CV, 2022 WL 3908843, at *4 (Tex. App.—San Antonio Aug. 31, 2022, pet. denied) (mem. op.) (holding a claim was not subject to arbitration where the claim "could certainly be brought independently without reference to the [Agreement] at all"); *SIG-TX Assets*, 2019 WL 1771301, at *4 (affirming trial court's denial of SIG-TX's motion to compel arbitration where "although SIG-TX's duty to prepare and inter [the decedent's] body arose from the contracts, there is an independent duty under Texas tort law to immediate family members not to negligently mishandle a corpse").

Appellant, as movant, bore the burden of establishing the existence of a dispute within the scope of the agreement. *See Whiteley*, 672 S.W.3d at 376. We can say with positive assurance that the 2020 Agreement arbitration language, however broad, is not susceptible to an interpretation which would cover a claim on the interment or disinterment of the decedent. *See id.*; *Henry*, 551 S.W.3d at 115. Having determined that appellees' claims fall outside the scope of the agreement, we do not address whether

12

appellees are bound to the arbitration agreement under the doctrines of direct-benefits estoppel and agency. *See* Tᴇx. R. Aᴘᴘ. P. 47.4. We overrule appellant's sole issue.

### III.    Cᴏɴᴄʟᴜsɪᴏɴ

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
21st day of March, 2024.